IRWIN STRASBURGER, Respondent, *v.* HERMAN ROSENHEIM and Another, Appellants, Impleaded with RITA W. LUCHS, as Executrix, etc., of MONROE LUCHS, Deceased, Defendant.

First Department, February 11, 1932.

*Edgar M. Leventritt* of counsel [*Edward Feldman* with him on the brief; *Edgar M. Leventritt,* attorney], for the appellant Herman Rosenheim.

*Henry W. Unger* of counsel [*Irwin Levine* with him on the brief; *Irwin Levine,* attorney], for the appellant Arthur H. Tupper.

*William A. Stern, 2d,* for the respondent.

SHERMAN, J.  On April 26, 1927, appellants and Monroe Luchs wrote to plaintiff that they were the owners of ninety-seven per cent of the common stock of the Best-Ever Slipper Company and " To induce you to make the purchase of the fifty shares of our preferred stock, we want to say that we will see to it that the company abides by the conditions outlined as follows:

" 1. The company will repurchase your stock at par on or before the 1st day of February 1931.

" 2. No dividends will be paid on the common stock of the company during any of the time that you are a stockholder until a reserve each year of at least 25% of the outstanding preferred stock has been added to the surplus of the company.

" Trusting the foregoing is satisfactory, we are

" Very truly yours,

" HERMAN ROSENHEIM, *Pres.*
" ARTHUR H. TUPPER, *V. P.*
" MONROE LUCHS, *Treas.*"

Thereupon plaintiff sent $5,000 and received a certificate for fifty shares of the preferred stock.

We hold that this letter constitutes the personal undertaking of the signers to see to it that the corporation did make the repurchase, which was to be paid out of its surplus funds approximately four years thereafter.

The corporation apparently did not have the necessary surplus (*Topken, Loring & Schwartz, Inc.,* v. *Schwartz,* 249 N. Y. 206) out of which to pay for the repurchase of this stock.  The letter provides for the accumulation of that surplus within that period.  If the corporation did not accumulate it defendants were under the duty of supplying the necessary surplus funds to carry out the engagement.

On February 5, 1929, Luchs wrote to plaintiff asking him to exchange the preferred stock for new preferred stock and a bonus of common stock, stating: " We are going to exchange your old Preferred Stock for the new Preferred Stock which carries a bonus of one share of Common Stock and at the same time renew our agreement with you to pay off this stock in 1931.

" We would appreciate it, therefore, if you would return to us the old stock, so that we can cancel it and issue the new stock to you."

In compliance with this direction, plaintiff forwarded his original certificate and received a new one for fifty shares of preferred stock together with a certificate for fifty shares of common stock.

Defendants brought about the issuance of these new shares for they executed and filed the certificate of change of capitalization in accordance with section 36 of the Stock Corporation Law. It is not claimed that the new shares of the preferred stock differed one whit from the earlier preferred shares and the effect of the change in capitalization was merely to give to plaintiff the bonus of an equal number of common shares.

On December 31, 1930, Luchs wrote a letter to plaintiff in which, referring to the repurchase agreement, he stated that the corporation had had an unsuccessful year and " We don't see how we can come through on this obligation." The undisputed affidavit of the corporation's accountant shows that the corporation had not been successful but had lost money so that it had no surplus at the end of the year 1930 and its capital was then impaired and this condition was present on February 1, 1931.

Plaintiff's attorney by letter dated April 2, 1931, demanded that the repurchase agreement be performed and stated that plaintiff stood ready to turn over " the stock " and " his holdings " to the company or to appellants upon payment. Apparently these letters received no reply. Obviously they related to whatever shares were then in plaintiff's possession.

The complaint sets forth the contract, but makes no reference to the exchange of shares, and proceeds as though there had been no change whatsoever in plaintiff's holdings. It pleads the demand made upon the corporation and the tender of the preferred shares to that corporation and " That thereafter plaintiff duly demanded that said defendants perform their said agreement, and duly tendered said stock to the defendants, but said defendants refused to carry out said agreement and ever since have failed so to do."

The answers while denying this paragraph and setting up many affirmative defenses admit the receipt of the letter of demand of April 2, 1931, in which plaintiff tendered the shares possessed by him.

Upon this motion made under rule 113 for summary judgment, the question presented is whether appellants have shown such facts as should be deemed sufficient to entitle them to defend. Their main contention appears to be that the obligation arising from the letter of April 26, 1927, was corporate and that no liability

was intended to be assumed by the signers as individuals. We find, as heretofore stated, no virtue in that position.

Respondent in addition shows by the affidavit of a law clerk employed by plaintiff's attorney that he called upon each of the appellants separately on May 1, 1931, to make a tender of the shares, both preferred and common, which were then in plaintiff's possession, and that he did make such tender and demanded payment. Appellants, admitting that this individual did call upon them, are not persuasive in their denial that he made any tender. That denial is not sufficient to raise a triable issue here. It is difficult to conceive why he called upon each of them, if it was not for the purpose of making the tender and demanding payment. Moreover, plaintiff's attorney having sent the unanswered letters of April 2, 1931, was not required to do more. It is idle to assert that the proof does not show that plaintiff was ready and willing to deliver all of his stock to defendants against payment or to deny that appellants were well aware of that fact.

The original contract had fixed the measure of plaintiff's recovery under the circumstances in evidence here. (*Wooster* v. *Sage*, 67 N. Y. 67, 72.) The clear proof makes unnecessary the trial of so-called issues of fact sought to be raised by the denials in the answers and by beclouding affidavits.

We have also examined the nine distinct and separate defenses contained in the answer of one appellant, and the five distinct and separate defenses found in the answer of the other appellant, and conclude that they are without merit.

Rule 113 of the Rules of Civil Practice would serve no purpose whatever if frivolous and transparently insufficient proofs and arguments such as have been brought forward here be held to create a triable issue. The already overcrowded trial term calendars would be cluttered up with phantom issues, the disposition of which would usurp and waste the time of the court. A defendant must show real and substantial facts " sufficient to entitle him to defend " (Rule 113) if he is to avert summary judgment under these rules which were carefully devised to eliminate unnecessary delay and further the prompt administration of justice.

The judgment and order appealed from should be affirmed, with costs to respondent.

FINCH, P. J., MERRELL, McAVOY and MARTIN, JJ., concur.

Judgment and order affirmed, with costs.