**Maurice B. FLINT and Mary Alice Flint, Co-Partners doing business as the Flint Company, Plaintiffs,**

**v.**

**OLEET JEWELRY MANUFACTURING CO., a partnership composed of Harold K. Oleet, William Oleet, and Irving Oleet, and Gerald Sears, Defendants.**

United States District Court
S. D. New York.
June 23, 1955.

Cooper, Dunham, Keith & Dearborn, New York City, John N. Cooper, Thomas J. Byrne, Jr., New York City, of counsel, for plaintiffs.

Emanuel Schwartz, New York City, for Oleet defendants.

Irving C. Nachbar, New York City, for defendant Gerald Sears.

DAWSON, District Judge.

In this action, both plaintiffs and defendants have moved for summary judgment under Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. The plaintiffs have also moved, in the alternative, for a preliminary injunction.

The complaint alleges two causes of action: one for unfair competition and one for copyright infringement. Defendants' answers deny generally the material allegations of the complaint. Depositions have been taken. Both sides rest their respective motions on the pleadings, the depositions, and affidavits submitted in support of the motions.

There appears to be no genuine issue as to the following material facts:

1. The plaintiffs are husband and wife, and are co-partners doing business under the name of "The Flint Company". The defendants Harold K. Oleet, William Oleet, and Irving Oleet do business under the name of "Oleet Jewelry Manufacturing Co." The defendant Gerald Sears is a sales representative of the Oleet Jewelry Manufacturing Co.

2. The Flints, after becoming members of the congregation of the Marble Collegiate Church in New York City, of which Dr. Norman Vincent Peale is Minister, read, in the course of their religious study, the Twentieth Verse of the Seventeenth Chapter of the Gospel according to St. Matthew, which is as follows:

"20. And Jesus said unto them, Because of your unbelief: for verily I say unto you, If ye have faith as a grain of mustard seed, ye shall say unto this mountain, Remove hence to yonder place; and it shall

remove: and nothing shall be impossible unto you."

It occurred to them that the carrying of a mustard seed on their person would be a reminder to them of their religious faith.

3. After experimentation, they perfected an article which consisted of a round transparent plastic ball with a mustard seed in the center thereof so that the seed could be clearly seen, and which could be attached to a bracelet, key chain, or necklace. They called their creation a "Mustard Seed Remembrancer".

4. In the early part of 1950, the Flints began to make "Mustard Seed Remembrancers" first for their friends and a short time later for various church groups, and then for sale to department stores and other stores throughout the Country. These "Mustard Seed Remembrancers" were accompanied by a tag or booklet quoting part of the verse from the Bible and pointing up the religious significance. A copy of the tag which has been produced on the motions shows that in addition to the verse from the Bible, the little card or tag has on it the statement:

"Your *Remembrancer* contains a genuine dark mustard seed.

May it remind you frequently of this scripture.

Keep it with you—and *remember* to have faith—always."

5. Shortly after the Flints began to merchandise their "Mustard Seed Remembrancers", considerable publicity was afforded to them and to these "Mustard Seed Remembrancers", which included:

(a) In May, 1950, as a result of an order from Walter Hoving, President of Bonwit Teller Company, New York, 1000 of the "Mustard Seed Remembrancers" were presented to guests at a Milestone Dinner given by "Guideposts", which is a publication edited by Dr. Norman Vincent Peale.

(b) In the September, 1950, issue of "Guideposts", which has a distribution to over 175,000 people throughout the United States, there was carried a history and description of the creation and development of the "Mustard Seed Remembrancer".

(c) In the Fall of 1951, the Associated Press distributed an article describing the development of the Flints' "Mustard Seed Remembrancer".

(d) The Flints themselves distributed booklets, literature, and sales circulars to buyers and prospective buyers of the "Mustard Seed Remembrancer".

(e) Dr. Norman Vincent Peale has referred to the "Mustard Seed Remembrancer" in sermons from his pulpit and from time to time over his weekly radio program which he delivers over a nationwide network.

(f) In Dr. Peale's book "The Power of Positive Thinking" published in 1952, and which for a long time has headed the best seller list of books in the United States (it is stated that 1,700,000 copies of the book have been sold throughout the United States), he had an article about the Flints and the "Mustard Seed Remembrancer".

6. The plaintiffs had sold 100,000 "Mustard Seed Remembrancers" up to November, 1951.

7. Defendant Harold K. Oleet and his sales representative Sears first became aware of plaintiffs' "Mustard Seed Remembrancer" when they saw an advertisement of it in the Fall of 1951. Sears thereafter purchased one of them and brought it back to New York and submitted it to Harold K. Oleet. Defendants conceded that they had never seen anything like it previously; that the "Remembrancer" and its accompanying booklet had a purely religious significance, and that without the accompanying booklet, the "Remembrancer" would not have had any significance.

8. The defendants thereupon copied the form and design of plaintiffs' "Mustard Seed Remembrancer" with minor changes, such as using a yellow mustard seed instead of a dark one. The defendants called their object "Your Mus-

tard Seed Charm" and made up a tag similar to that used by the plaintiffs, quoting the same verse from the Bible, and stating:

"Your charm contains a GENU-INE mustard seed.

Keep it with you * * * and remember to have faith * * * always.

Gain hope, confidence, success and a full life * * * through faith."

They then attached their object to a type of bracelet similar to the one that plaintiffs had been using and since December, 1951, have been selling the "Mustard Seed Charm" and issued circulars, literature, and booklets to promote their sales. Certain of that literature states, or indicates, that the Oleets are the creators of the mustard seed jewelry.

9. The defendants, in trade journals and by correspondence, have asserted that Oleet Jewelry Manufacturing Co. was the owner of the trademarks "Mustard Seed", "Mustard Seed Charm" and "Mustard Seed Faith Charm" and have filed applications for trademark registrations thereon, and published a warning notice in the trade journals directed to all of their competitors, including the Flints.

10. The papers submitted on the motion indicate, and there can be no substantial dispute, that there is actual confusion in the minds of the buying public by reason of the foregoing facts; that customers have cancelled orders submitted to the plaintiffs, and that articles made by the defendants have been mistakenly returned to the plaintiffs for replacement. There can be no substantial dispute that the articles are so similar in style, design, format and accompanying tag that such confusion could readily be created.

11. A certificate of registration of copyrights of the tag used by the plaintiffs was applied for in March, 1952, and issued on March 31, 1952. On the date of the first publication of the tag on May 8, 1950, the tags carried a notice of copyright on the back cover thereof which states: "Copyright 1950". It appears that some of the tags or booklets were distributed with the symbol (C) in place of the word "Copyright".

It is conceded that neither the "Mustard Seed Remembrancer" nor the "Mustard Seed Charm" is patented, and that no trademark has been granted with respect to either of them. Therefore, the action is purely based on unfair competition and violation of the copyright on the tag or booklet.

Peculiar and arbitrary features in the form, structure and arrangement of the parts of an article often are devised, in large part, to distinguish it—to give it individuality—particularly where they are not functional, i. e., not necessary to the usefulness of the article. In such a case, imitation of the form and general appearance of the article itself, through copying or imitating such features, may, in and of itself, constitute unfair competition. Nims, Unfair Competition and Trade-Marks, 4th Ed., Vol. 1, p. 370; Restatement of Torts, §§ 741, 742.

The rule of law is well summarized in Nims, op. cit. at p. 378:

"If an article has a striking characteristic, and the article is identified and recognized by purchasers because of such characteristic, the right to make and use the characteristic can be protected. This rule finds its support in what is referred to in the cases as nonfunctional unfair competition. It presupposes that the appearance of the article, like its descriptive title, has a secondary meaning, and has been associated in the public mind with the first one to use it; and if a second user imitates the article so that the public may believe his goods have come from the first and may buy, in part at least, because of that deception, the court will enjoin the imitator."

Thus the existence of unfair competition may depend in part upon wheth-

er there is a secondary meaning attaching to the unique appearance of plaintiffs' product. If such secondary meaning does exist, the actionable harm may result to the plaintiffs either from the likelihood (a) of loss of customers, (b) loss of reputation or (c) of both. In such a case, the loss can result from a customer's belief that the competing article derives from the same source as that of the party complaining, and it does not matter whether customers know just who is the source. Mastercrafters Clock & Radio Co. v. Vacheron Watches, Inc., 2 Cir., 221 F.2d 464.

When there is the possibility of confusion, the intent of the copier becomes decidedly relevant in determining whether, in fact, the copying is confusing. If the copier intends that the copy look like that of the other party, this fact alone gives rise to a powerful inference that confusion is likely and puts on the alleged infringer the burden of proving that it is not. Mastercrafters Clock & Radio Co. v. Vacheron Watches, Inc., supra; Restatement of Torts, § 729(f).

The testimony of the defendant Sears given on his deposition establishes without doubt the intent of the defendants. Sears testified that he is a sales representative for the Oleet Jewelry Manufacturing Co.; that in October and November, 1951, he saw an advertisement by Bonwit Teller & Co. for the "Mustard Seed Remembrancer"; that later, when he was giving a jewelry demonstration in a store in Indianapolis, two ladies came in and asked him if he had the "Mustard Seed Jewelry"; that he therefore became more curious about it and went to another store in Indianapolis where the "Mustard Seed Remembrancer" attached to a bracelet was on sale and he bought one. He took the article back to New York and submitted it to Harold Oleet and asked him if it could be made, saying that he thought that such articles could be sold. He stated that he had never seen a "Mustard Seed Remembrancer" in any form prior to that time. He stated that in discussing whether it would sell, he and Mr. Oleet discussed the fact that the item seemed to have a "meaning" which he said was basically a religious meaning. He said to Mr. Oleet: "Here is an item with a gimmick. Would you be interested in making it?"

Thereafter, the defendants began the manufacture of the product, which was substantially a duplicate of the product put out by the plaintiffs, and defendants arranged to have it sold in numerous stores. Their product had attached to it the card referred to above, quoting the same verse from the Bible and identifying the product as a "Mustard Seed Charm" rather than a "Mustard Seed Remembrancer".

A few months thereafter, on February 25, 1952, the defendants caused an advertisement to be published in the "Women's Wear Daily" reading as follows:

"Warning Notice

We hereby notify the jewelry trade and the general public that 'Mustard Seed', 'Mustard Seed Charm', and 'Mustard Seed Faith Charm' are our Trade Marks, are in use by us and we have duly filed applications for Registration pursuant to the Trade Mark Laws of the U. S. for use in connection with jewelry.

We intend to guard zealously and protect our Trade Marks and property rights.

We shall seek appropriate legal redress and damages against any and all infringers.

Oleet Jewelry
Manufacturing Company
373 Fifth Avenue,
New York 16, N. Y."

We therefore have a situation where the defendants, knowing that the plaintiffs had developed a business in the sale of the "Mustard Seed Remembrancers", proceeded to copy the design of the "Remembrancer", including features which obviously were non-functional, and put them on the market accompanied by a tag which, although not a copy of that

of the plaintiffs, bore a very close similarity to it.

Having done that, the defendants then asserted to the trade through a trade publication that they had a trade-mark on "Mustard Seed" and "Mustard Seed Charm", although they had never secured registration for such terms. Although they knew that they were not the originators of such an item, they thereby gave the impression to the public that they were the originators of the item. The confusion to the public resulting therefrom is adequately established in the moving papers.

Defendants urge that plaintiffs' motions should be denied and that they should be granted summary judgment on the ground that no "secondary meaning" had attached to plaintiffs' product so as to identify it in the minds of the public as solely that of the plaintiffs, and hence that there had been no "palming off" of defendants' product as that of the plaintiffs. They urge that merely copying of a competitor's unpatented goods does not, in and of itself, constitute unfair competition. Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Swank, Inc. v. Anson, 1 Cir., 1952, 196 F.2d 330; and that the period in which plaintiffs had been marketing their product was so short that no secondary meaning had attached to it.

■ While unfair competition was originally applied to the palming off of one's goods as those of a rival trader, and therefore required proof of an established secondary meaning, this limited view has been considerably broadened in recent years, particularly in the State of New York, to include what is an unfair course of dealing, even without proof of an established secondary meaning. Avon Periodicals v. Ziff-Davis Pub. Co., Sup.1952, 113 N.Y.S.2d 737, affirmed 1st Dept.1953, 282 App.Div. 200, 122 N.Y.S. 2d 92. The Court there held that while plaintiff's name on its product had not acquired a secondary meaning, nevertheless, the defendant was not entitled to duplicate plaintiff's product "to the point that there would be no obvious distinction between the two to the running eye."

The New York Courts have applied the rule that where the equity power of Courts is invoked, the question is not whether a secondary meaning has been established, but whether the acts of a defendant are "fair or unfair, according to principles recognized in equity, and not by 'The morals of the market place.'" See Oneida, Ltd. v. National Silver Co., Sup.Ct.1940, 25 N.Y.S.2d 271, 276.

In New York, this rule applied by the Courts has recently been codified into law. Section 361–a of the General Business Law of the State of New York, McK. Consol.Laws, c. 20, Laws 1954, c. 630, effective July 1, 1954, provides:

"Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be a ground for injunctive relief in cases of trade-mark infringement or unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

The Federal Courts have recognized this development in the law of unfair competition as applied by the Courts in New York. In a recent case, the Court of Appeals of this Circuit upheld the granting of a preliminary injunction on the ground that the defendant's advertising and packaging of its product was so similar to the material used by the plaintiff for its product as to entitle the plaintiff, under state law, to protection, even without a preliminary showing of secondary meaning. Noma Lites, Inc., v. Lawn Spray, Inc., 2 Cir., 222 F.2d 716.

■ The possibility of confusion arising from the product manufactured by Oleet Jewelry Manufacturing Co. combined with the course of conduct in marketing the product are such as to establish prima facie that this defendant is

engaged in unfair competition. It should be restrained, pending the trial of this action, from marketing or offering for sale the product now described by it as a "Mustard Seed Charm" or any item so closely similar to it as to cause possible confusion in the minds of the public as to the source of such product.

The papers show with reference to the defendant Gerald Sears that he is an employee or representative of the defendant Oleet Jewelry Manufacturing Co. Since the injunction to be issued will run against defendant Oleet Jewelry Manufacturing Co., its employees, agents, and representatives, there is no necessity shown in the papers for the issuance of a preliminary injunction separately against the defendant Gerald Sears.

When we consider the motions for summary judgment, however, a different problem is presented. No such motion can be granted where there is a genuine issue as to a material fact. Rule 56, Rules of Civil Procedure. A question as to whether there is a reasonable likelihood that the public would be deceived would present a question of fact, and where that issue has been raised by the parties, summary judgment should not be granted. Federal Glass Co. v. Loshin, 2 Cir., 224 F.2d 100.

Inasmuch as it is the determination of the Court that summary judgment should not be granted, but that a preliminary injunction should be granted, it becomes unnecessary at this time to consider the copyright cause of action. Certain questions of fact are presented with reference to this cause of action which would preclude the Court from granting summary judgment; and the issuance of a preliminary injunction on this cause of action would add nothing.

So much of the motions as seeks summary judgment or seeks a preliminary injunction against the defendant Sears is denied.

The motion of plaintiffs for a preliminary injunction restraining the defendant Oleet Jewelry Manufacturing Co., its partners, employees, agents and representatives, pending the trial of this action, from directly or indirectly making, distributing, or selling, or causing to be made, distributed, or sold copies of plaintiffs' "Mustard Seed Remembrancer" or any colorable imitation or modification of plaintiffs' "Mustard Seed Remembrancer" is granted.

This opinion shall constitute the findings of fact and conclusions of law.

Settle order on 3 days notice on or before July 6, 1955. Together with the proposed order, the parties should submit memoranda or affidavits to aid the Court in the determination of the amount of the bond to be filed in connection with such preliminary injunction .