THOMAS BALL et al., Respondents, *v.* UNITED ARTISTS CORPORATION et al., Appellants.

First Department, April 25, 1961.

*Walter S. Beck* of counsel (*Albert F. Smith* with him on the brief; *Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for appellants.

*Maurice Shire* of counsel (*Jonas Ellis* with him on the brief; *Emil K. Ellis,* attorney), for respondents.

EAGER, J. This is an appeal by defendants from an order entered December 28, 1960, denying in all respects their motion for summary judgment dismissing the complaint and for vacatur of notices of examination served by plaintiffs.

The action is at law to recover money damages for alleged wrongful use by defendants of the title " China Doll " as the title of a motion picture released, distributed and shown by them. There are two alleged causes of action, namely, the first, to recover for the alleged wrongful acts of defendant in having " unlawfully appropriated to their own use and pirated the said property of the plaintiffs " in said title. The theory of this cause is that plaintiffs have acquired and own a proprietary interest in the title " China Doll " in that they formulated the same in the year 1946; in that thereafter they have used and extensively advertised and exploited the same as the name for

a night club operation and as the title for revues; in that they have used the term in names of certain companies incorporated by them and in that the plaintiffs have licensed the use of such title by others for revues or theatrical or movie productions.

The second alleged cause is grounded on the theory of unlawful competition, the plaintiffs alleging that defendants with full knowledge of the rights of the plaintiffs, "have competed and are competing unfairly with the plaintiffs and have caused confusion and deception in the minds of the public in creating the impression that the motion picture ' China Doll ' is connected with and derived from the above stated endeavors of the plaintiffs in the entertainment field, and that plaintiffs are associated therewith."

The answers of the defendants deny all material allegations of the complaint, and included therein is an alleged affirmative defense, "that the title ' China Doll ' has been used as a title for numerous theatrical and literary works   *   *   *   both before and after the alleged use of the words ' China Doll ' by plaintiffs as a name for a Chinese restaurant; that the words ' China Doll ' are descriptive words and have been used and were and are a common expression in use for many years long prior to the alleged use thereof by plaintiffs; and that   *   *   * plaintiffs have no property right in and to the words or title ' China Doll ' and the same were and are in the public domain, and not susceptible of exclusive use or ownership by plaintiffs."

The defendants, by material facts set up in their moving affidavit, establish prima facie that the action has no merit in that the expression " China Doll " is a commonplace term or expression which has over the years been frequently used by divers persons as the title of literary works, plays and theatrical productions and in that the defendants' motion picture, using the title, has not competed in any way with any use of the title by plaintiffs.

Under the circumstances, where, as here, the defendants make a prima facie showing of lack of merit to the action, the plaintiffs were bound to come forward with proof of evidentiary facts showing that there is a bona fide issue requiring a trial (*Shapiro* v. *Health Ins. Plan*, 7 N Y 2d 56, 63; *Di Sabato* v. *Soffes*, 9 A D 2d 297). Taking all the affidavits and proofs submitted, it is incumbent on the court to peruse the same to ascertain if there is here any real issue of fact for a trial. (*Sillman* v. *Twentieth Century-Fox Film Corp.*, 3 N Y 2d 395, 404; *Di Sabato* v. *Soffes, supra*, p. 300; *Kramer* v. *Harris*, 9 A D 2d 282.) Lacking the appearance of a genuine and substantial issue of fact, the court

may and should dispose of the matter upon the law, and direct judgment accordingly. (*Strasburger* v. *Rosenheim,* 234 App. Div. 544, 547.)

In determining the primary question involved, namely, whether or not there is here a genuine issue for trial, we must not lose sight of the nature of this particular action and the theory of plaintiffs' alleged causes. It is particularly important to note that the action is one brought at law by plaintiffs solely to recover damages for alleged wrongful acts of the defendants. Thus, inapplicable and of little help are the many decisions sustaining actions in equity for an injunction upon proof merely of a likelihood of deception in the use by a defendant of a name or title formerly or also used by plaintiff (see, e.g., *Famous Sea Food House* v. *Skouras,* 272 App. Div. 258).

With respect to plaintiffs' alleged first cause of action, it is to be noted that they claim, as set out in the affidavit of the plaintiff Lee Mortimer, that it "proceeds on the theory that the defendants had unlawfully converted to their own use a title formulated and developed by plaintiffs", and that "This cause of action is wholly independent of the 'secondary meaning' element". They do not, however, claim to hold a duly registered trade-mark or a copyright in any way embracing the title. In fact, it appears without dispute that the particular term "China Doll" was not originated by plaintiffs.* They were not the first to coin and create the term as a title for use in connection with the arts, or in the world of entertainment. Thus, they cannot succeed on the theory that they acquired a property or exclusive rights in the title by reason of their alleged formulation and original development of the same in the year 1946. (See *Beacon Magazines* v. *Popular Pubs.,* 248 App. Div. 204.)

As a matter of law, one may not obtain a proprietary interest in a title or name merely by formulating the same from words

---

* The defendants show, without contradiction, that the title "China Doll" was used for a musical comedy in two acts presented at the Majestic Theatre in New York, in 1904; in the production of a stock play at the Civic Theatre at Fort Worth, Texas, in 1929; as the title of a story published in Street & Smith's *Sport Story Magazine* in 1934; as the title of another story by Dorothy Dow, published in *All-Story Love Stories,* in 1934; as the title of a sketch presented in burlesque through the Izzy Hirst Circuit in the years 1936, 1938, 1939 and 1940; as the title of a story published by Frederick Kumen, Jr., in the *New York Daily News,* in 1938; as the title of an article by Martha Sawyers in *Collier's Magazine,* published in 1946; as the title of a musical comedy in two acts copyrighted on May 28, 1952; and as the title of a stage spectacular in January, 1957, put on at the Southern California Exposition and Country Fair.

in the English language and thereafter using it in connection with an enterprise. " Despite a persistent belief that the first use of a specific name or description gives a power to such user to prevent its employment by others, it is important to find that no such doctrine exists." (Per FRANK, J., in *Avon Periodicals* v. *Ziff-Davis Pub. Co.*, 27 Misc 2d 160, 162, mod. 282 App. Div. 200, citing *Federal Tel. & Radio Corp.* v. *Federal Tel. Corp.*, 180 F. 2d 250, opinion by LEARNED HAND, Ch. J.; *Brown & Bigelow* v. *Remembrance Adv. Prods.*, 27 Misc 2d 157, WASSERVOGEL, Off. Ref., mod. 279 App. Div. 410, affd. 304 N. Y. 909.)

Apart from its use in connection with a person, a title or name is the means of designating anything and everything of which one may speak, be it tangible or intangible. Disassociated with the subject thereof, whatever it may be, a title or name composed of ordinary words, cannot acquire the status of property. So disassociated, it becomes merely words; and all words of our language are in the public domain. All who speak or write have an inherent right to use any and all words in the English language or any combination thereof for any legitimate purpose. Thus, it was correctly said by a learned Judge that " we can find no warrant in the books for considering a name, qua name, as property. No doubt ' property ' is itself a conventional concept, but so are all legal concepts; this one has not as yet embraced names." (LEARNED HAND, J., in *Mutual Life Ins. Co.* v. *Menin*, 115 F. 2d 975, 979; see, also, *Slater* v. *Slater*, 175 N. Y. 143; *Falk* v. *American West Indies Trading Co.*, 180 N. Y. 445.)

Concededly, however, words of common speech, including commonplace expressions, may, by reason of their use and association with particular goods or with a particular business or enterprise, acquire a special significance with the general public or a segment thereof, namely, they may become generally known and referred to as the title or name for such goods, business or enterprise. This special significance acquired by a title or name is denominated in law as a " secondary meaning " (see 1 Nims, Unfair Competition and Trade-Marks [4th ed.], § 37); and where a title or name acquires a secondary meaning, the owner of the goods, business or enterprise labeled thereby, becomes possessed of legally enforcible rights.

Where goods, or a business or enterprise, has a title or name well established in the public mind, the owner has definite rights and remedies against another who unfairly uses such title or name in his business and thereby deceives or confuses the public.

In such cases, the latter is held accountable on the theory that he has engaged in unfair competition, rather than on the theory that he has converted or appropriated to his use the property of the former. (See American Law Institute, Restatement, Torts, § 755*; *United Drug Co.* v. *Rectanus Co.*, 248 U. S. 90, 97; *Klein* v. *Lawson*, 58 N. Y. S. 2d 152, affd. 269 App. Div. 935.) The rights of the owner of the goods, business or enterprise "are not founded on a bare title to a word or symbol but on a cause of action to prevent deception". (*Du Pont Cellophane Co.* v. *Waxed Prods. Co.*, 85 F. 2d 75, 81.) Thus, in *Chadwick* v. *Covell* (151 Mass. 190, 193–194) Mr. Justice HOLMES said: "When the common law developed the doctrine of trade-marks and trade names, it was not creating a property in advertisements more absolute than it would have allowed the author of Paradise Lost; but the meaning was to prevent one man from palming off his goods as another's, from getting another's business or injuring his reputation by unfair means, and, perhaps, from defrauding the public. Indeed, the plaintiff would not claim an absolute property in the marks and names merely as such. She would not argue that she had a right to forbid their use for any purpose by others * * * in connection with some entirely different class of goods."

In view of the foregoing, it follows that, as a matter of law, plaintiffs have no cause of action on the theory that the defendants have "unlawfully converted to their own use" the title "China Doll" and such cause of action should be dismissed. (See, further, *Becker* v. *Loew's Inc.*, 133 F. 2d 889; *Manners* v. *Triangle Film Corp.*, 247 F. 301; *Underhill* v. *Schenck*, 238 N. Y. 7, 19–22.)

Clearly, liability on the part of the defendants here, if it exists, must rest on the theory that their acts have constituted unfair competition. In its general and common form, actionable unfair competition exists where there is a "palming off", that is, where one person sells goods as goods of another or does business as the business of another. (See 87 C. J. S., Trade-

---

*There is this comment in American Law Institute, Restatement of the Law on Torts (§ 755): "*b. Rationale.* The right to the use of a trade-mark or trade name is not itself an independent object of property. The symbol is only a means of identifying goods, services or a business associated with a particular commercial source, whether known or anonymous (see §§ 715–716). * * * The interest in a trade-mark or trade name is protected, then, not because of any quality in the mark itself, such as invention or artistic merit, but only as a means of protecting the good will of the source which the mark symbolizes. The good will thus protected is earned by and attached to that source and not to the symbol itself."

Marks, Trade-Names and Unfair Competition, § 14; *Harvey Mach. Co.* v. *Harvey Aluminum Corp.*, 9 Misc 2d 1078, 1080, appeal dismissed 4 A D 2d 1014.) But, here, admittedly, the defendants have not been competing against the plaintiffs. The defendants and their motion picture have not in any way actually competed with plaintiffs' night club, theatrical or other business activities.*

Concededly, as plaintiff contends, the fact of noncompetition is not decisive. A right of action on the theory of unfair competition is not limited to cases where the parties have been or are competing in the same market. '' There is an area of unfair competition which does not consist of palming off, but of creating confusion''. (*Ronson Art Works* v. *Gibson Lighter Co.*, 3 A D 2d 227, 231.) With or without actual competition between the parties, actionable unfair competition '' may result from representations or conduct which deceive the public into believing that the business name, reputation or good will of one person is that of another.'' (*White Studio* v. *Dreyfoos,* 221 N. Y. 46, 49.)

In any event, the gist of the action for unfair competition is '' Confusion of the public and damage to the plaintiff ''. (*Hotel Syracuse* v. *Motel Syracuse,* 283 App. Div. 182, 185, affd. 309 N. Y. 831.) The gravamen of the action is '' unlawful business injury ''. (*Ronson Art Works* v. *Gibson Lighter Co., supra,* p. 230; *Harvey Mach. Co.* v. *Harvey Aluminum Corp.*, 9 Misc 2d 1078, 1080, appeal dismissed 4 A D 2d 1014.) The basis of the action at law is fraud, or deception or confusion of the public amounting to fraud, and resulting injury to plaintiffs. A right of recovery of damages in such an action exists only upon a showing that the defendants' acts were such as to amount

---

* The plaintiffs' business activities under the title or name "China Doll" have been limited chiefly to the operation in New York City until 1950 of a night club and Chinese restaurant and the operation, sponsoring or licensing under such name from 1946 to 1957 of revues centered around dancing girls. Plaintiffs also claim that they licensed the use of a title to a stage production in New York City, but they do not show the nature of this production or that the defendants' picture in any way competed with it. The fact is that the defendants' picture "China Doll" released in December, 1950 is entirely dissimilar in nature to plaintiffs' uses of the title. The picture depicts the adventures of the United States Air Corps, generally known as the "Flying Tigers", which operated in war-torn China in 1943. Their mission was the piloting of cargo aircraft over the "Himalayan Hump" between China and India. In addition to depicting the activities of the aviators and Japanese marauders, the picture also contained a love story of an affair between an American pilot and a Chinese girl, both of whom are killed by strafing attacks by Japanese planes, in a typical action-filled climax.

to a fraud upon the plaintiffs or upon the public and that the plaintiffs have been injured thereby.*

Seeking to support their action in accordance with the generally accepted principles, the plaintiffs allege that, by virtue of their use of the title "China Doll," it had acquired a secondary meaning; and they further allege, as afore-noted, that by the use of the title, the defendants "have caused confusion and deception in the minds of the public in creating the impression that the motion picture 'China Doll' is connected with and derived from the . * * * stated endeavors of the plaintiffs in the entertainment field, and that plaintiffs are associated therewith;" and that by reason of their acts, "defendants have caused substantial damages to the plaintiffs". If these allegations are supportable by anything presented here by the plaintiffs, a trial would be required, but, lacking any real issue with respect thereto, the complaint should be dismissed.

In the final analysis, the question here is whether or not the plaintiffs have presented anything by way of fact or detail tending to indicate that the acts of the defendants have tended

---

* This is clear. Research, however, has failed to turn up any authoritative decision directly so holding. (But, see, *Westcott Chuck Co.* v. *Oneida Nat. Chuck Co.,* 122 App. Div. 260.) This is not strange, because, sometime ago, an action at law to recover for unfair competition was said to be "now obsolescent"; that the action was "mainly of historical interest, since trademark litigation is generally confined to equity". (30 Col. L. Rev. [1930], p. 769.) The action at law originated "as an action on the case for deceit" (see *id.*), and in such an action fraud was the essence of the injury. "Two main points must be proved: the fraudulent nature of the wrong committed by the defendant, and the nature of the injury suffered by the plaintiff" (Browne, Trade-marks [2d ed.], p. 349). So, in order to sustain the action at law, acts amounting to fraudulent conduct on the part of the defendant must be established. Thus, in American Law Institute, Restatement of Law on Torts (§ 745) it is stated that one who infringes another's trade name "is liable for the pecuniary loss to the other resulting from the harm to his business caused by the actor's conduct, if, but only if, the actor engaged in his conduct with the purpose of securing the benefit of the reputation in the market of the other, or his goods, services, business, trade-mark or trade name or the physical appearance of his goods." Furthermore, it is clear that a plaintiff, in order to recover compensatory damages for the alleged wrongful use of plaintiff's trade name, is bound to establish that he has in fact been injured by the acts of the defendant. This is indicated by injunction action decisions incidentally passing upon the question of damages. They hold that the damages generally recoverable for unfair competition are not what the defendant gained but are limited to the losses actually sustained by the plaintiff by reason of defendant's deceptive acts. (See 87 C. J. S., Trade-Marks, Trade-names and Unfair Competition, § 213; *Westcott Chuck Co.* v. *Oneida Nat. Chuck Co., supra; Allen Mfg. Co.* v. *Smith,* 224 App. Div. 187; *Biltmore Pub. Co.* v. *Grayson Pub. Co.,* 272 App. Div. 504; *Ronson Art Works* v. *Gibson Lighter Co.,* 3 A D 2d 227; *Lerner* v. *Sportsmaster Co.* [BREITEL, J.], 4 Misc 2d 478.)

to confuse or deceive the general public or a segment thereof; and the answer depends upon whether or not there existed a secondary meaning for the title " China Doll " as claimed by plaintiffs. Further, from plaintiffs' standpoint, it must appear not only that a secondary meaning was once associated with this title, but also that the meaning continued to the date of the alleged use by the defendants of the title for their motion picture. (See Ann. 23 A. L. R. 2d 306 and cases cited.) If a secondary meaning was nonexistent at the time of the alleged wrongful acts of the defendants, the necessary element of " confusion and deception in the minds of the public ", alleged by plaintiffs, would be lacking; and the plaintiffs would have no case. (*Becker* v. *Loew's, Inc.*, 133 F. 2d 889, *supra*; *Manners* v. *Triangle Film Corp.*, 247 Fed. 301, *supra*.) *

It was, however, as afore-noted, the duty of the plaintiffs to come forward and show that there is an issue to be tried. " ' A shadowy semblance of an issue ' is not enough ". (*Di Sabato* v. *Soffes*, 9 A D 2d 297, 300, *supra*.) The mere conclusory averments

---

* These cases are particularly decisive here. In *Becker* v. *Lowe's, Inc.*, the plaintiff was the owner of a copyrighted book entitled "We who Are Young", published in 1936, with virtually all sales thereof ceasing after 1937, and he sought relief against the production and showing by defendant of a motion picture under the same title, first shown in 1940. The court held that the acts of the defendant did not constitute unfair competition, stating (p. 893), "A title must attain a secondary significance before any property rights in it can be protected [citing cases], and anyone may use a title, if there is no secondary significance, since the mere use of a substantially similar title, if not used in such a manner as to induce the public to believe that the work to which it is applied is the identical thing which it originally designated, does not constitute unfair competition [citing cases] ". The court further held in effect (p. 893) that a case on the theory of unfair competition was not made out in that there were no apparent grounds for confusion between the plaintiff's book containing, as it did, an economic discussion concerning a young couple's struggle against adversity, and the defendant's motion picture which depicted a romantic love story.

In *Manners* v. *Triangle Film Corp.*, it appeared that the plaintiff had written and produced at a few matinee performances, a one-act play entitled "Happiness", and that he had later announced that he intended to write and produce a three-act play under the same title. The court held that he did not have such a right in the title as to entitle him to enjoin the use thereof as the title of a motion picture. The court noted generally that (p. 303) "There may, of course, be competition between a spoken play and a photoplay as to subject-matter. * * * There may be unfair competition in the appropriation of the same title of a play, quite apart from the consideration of any property right. In that case, however, it would be necessary to show that the claimant had used the title so extensively as to give it a secondary signification." With respect to plaintiff's claim that he was entitled to protection because he had announced his intention to use the title in a three-act play to be written and produced by him, the court said (p. 303), "His language is merely that of expectation, which cannot create a right against the public."

in plaintiffs' affidavit may not be accepted as showing an issue of fact. We have looked in vain to find anything evidentiary to indicate that, by reason of a secondary meaning for the title or otherwise, the defendants' use of the same had a tendency at any time to confuse or deceive the public in New York City or elsewhere, or any segment thereof, into believing there was a connection between the plaintiffs' activities and the defendants' motion picture. There is nothing submitted to indicate that the defendants' use of the title in connection with their picture had deceived anyone or was fraudulent. On the other hand, it affirmatively appears that the plaintiffs' actual use of the title had ceased by the time the defendants' picture was released. Furthermore, the defendants' activities in producing, releasing and showing a dramatic motion picture, depicting war episodes interwoven with a love story, differs so greatly from the plaintiffs' activities that it is obvious that ordinarily no one would have reason to believe that there was a connection between the parties and their respective businesses or enterprises.

The decisions, cited by plaintiffs, being rendered in equitable actions brought for an injunction, do not at all lend support to this action. Such actions are maintainable upon a showing of a likelihood of confusion, with a threat of injury to plaintiffs, but such a showing in this type of action, being one at law to recover damages, is not sufficient to raise an issue requiring a trial. For instance, *Tiffany & Co.* v. *Tiffany Prods.* (147 Misc. 679, affd. 237 App. Div. 801, affd. 262 N. Y. 482) especially relied upon by plaintiffs, was not an action at law but an action for an injunction brought by the well-known Tiffany jewelry store to restrain the use of the word '' Tiffany '' by the producers of a motion picture film. In such case, as indicated in the opinion of DORE, J., at Special Term, there was the showing, lacking here, that the acts of the defendant '' in fact did obtain, an unfair advantage for defendant from the good will created by plaintiff in the name '' (p. 683). And *Philadelphia Stor. Battery Co.* v. *Mindlin* (163 Misc. 52) was also an action for injunction, which was brought by a storage battery company against the use of its trade name '' Philco '' by defendant in connection with the sale of razor blades. There, the court granted a temporary injunction, finding (p. 55) that '' Confusion of source is inevitable in the present case.'' But here, the plaintiffs offer nothing concrete tending to show that confusion has resulted from defendants' use of the term '' China Doll ''.

In conclusion, it appears that there is no issue of fact here. As to the first cause of action, it is clear as a matter of law, that there was no misappropriation by defendants of any prop-

erty interest acquired or held by plaintiffs in the title '' China Doll ''. As to the second cause of action, it does not appear that there is here a genuine issue requiring a trial. There is nothing whatever by way of fact to show that defendants' use of the title has resulted in confusion or deception whereby the plaintiffs have sustained an unlawful business injury. Therefore, it is concluded that the defendants are entitled to summary judgment dismissing the complaint. Thus, the order, entered December 28, 1960, should be reversed, on the law, with $20 costs and disbursements, and defendants' motion for summary judgment granted, with $10 costs.

BOTEIN, P. J., VALENTE, McNALLY and BASTOW, JJ., concur.

Order entered on December 28, 1960, denying defendants' motion for summary judgment, and for an order vacating plaintiffs' notices of examination before trial, unanimously reversed, on the law, with $20 costs and disbursements to the appellants, and the defendants' motion for summary judgment granted, with $10 costs.