**NATIONAL COLOR LABORATORIES, INC., Plaintiff,**

v.

**PHILIP'S FOTO CO., Inc. and Philip Rohold, Defendants.**

**No. 66 Civ. 4168.**

United States District Court
S. D. New York.

Sept. 7, 1967.

---

Samuel Kalmanash, New York City, for plaintiff.

Wechsler & Solodar, New York City, for defendants.

MANSFIELD, District Judge.

In this diversity suit for unfair competition plaintiff National Color Laboratories, Inc., a New Jersey corporation, seeks to enjoin[1] defendants from using the name "National Color Labs" in connection with the business of developing and processing photographic film, charging that defendants have intentionally and fraudulently palmed off their services as those of the plaintiff, thereby obtaining the benefit of plaintiff's reputation and causing confusion to the public. The case is before the Court on plaintiff's motion for summary judgment.

Plaintiff's action is based on a common law property right it claims to have acquired in the words "National Color Laboratories." A prerequisite to the assertion of such a right in words

such as these is a showing that the name has taken on a special or secondary meaning in the mind of the public—a meaning which suggests the company to the public at the very mention of the trade name, e. g., Maternally Yours v. Your Maternity Shop, 234 F.2d 538 (2d Cir. 1956); Eastern Const. Co. v. Eastern Engineering Corp., 246 N.Y. 459, 159 N.E. 397 (1927); Cue Publishing Co. v. Colgate-Palmolive Co., 45 Misc.2d 161, 256 N.Y. S.2d 239 (Sup.Ct.), affd. mem. dec., 23 A.D.2d 829, 259 N.Y.S.2d 377 (1st Dept. 1965);[2] and that it had acquired such a meaning at the time when and the place where the defendants commenced extensive and continued use of its name. In other words, mere priority of use of a name gives a plaintiff no rights in that name (S. C. Johnson & Son v. Johnson, 175 F.2d 176 (2d Cir.), cert. denied, 338 U.S. 800, 70 S.Ct. 103, 94 L.Ed. 527 (1949); Ball v. United Artists Corp., 13 A.D.2d 133, 214 N.Y.S.2d 219 (1st Dept. 1961); Cue Pub. Co. v. Colgate-Palmolive Co., supra; Schwartz v. Hampton, 30 Misc.2d 837, 219 N.Y.S.2d 106 (Sup.Ct. 1961), affd., 16 A.D.2d 915, 230 N.Y.S.2d 666 (1st Dept. 1962); Avon Periodicals v. Ziff-Davis Pub. Co., 27 Misc.2d 160, 113 N.Y.S.2d 737 (Sup.Ct.), modified, 282 App.Div. 200, 122 N.Y.S.2d 92 (1st Dept. 1953)) unless he can also show that the public identified the name with the plaintiff's business prior to defendant's adoption and use of the name in an area where plaintiff had enjoyed such a reputation. Federal Glass Co. v. Loshin, 224 F.2d 100 (2d Cir. 1955); see Maternally Yours v. Your Maternity Shop, supra; Polaroid Corp. v. Polarad Electronics Corp., 182 F.Supp. 350 (E.D.N.Y.1960), affd., 287 F.2d 492 (2d Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); Schwartz v. Hampton, supra.

---

1. Plaintiff also seeks an accounting.

2. Decisions indicating that it is not necessary to establish a secondary meaning in a name before obtaining a preliminary injunction for unfair competition with respect to a product or place of entertainment, e. g., Avon Periodicals v. Ziff-Davis Pub. Co., 27 Misc.2d 160, 113 N.Y.S.2d 737 (Sup.Ct.), modified, 282 App.Div. 200, 122 N.Y.S.2d 92 (1st Dept. 1953); Santa's Workshop, Inc. v. Sterling, 282 App.Div. 328, 122 N.Y.S.2d 488 (3d Dept. 1953), are limited to claims of outright piracy of *all* aspects of a product or a place of business including the name, which possibly had not acquired a secondary meaning. No such situation is presented here.

■ Since an unfair competition suit involves the public's interest in protection against deceit as to the sources of its purchases, the businessman's right to enjoy business earned through investment in the good will and reputation attached to a trade name, and the interest of others in not being restrained from free use of trade names because of mere token use on the part of one, see United States Ozone Co. v. United States Ozone Co., 62 F.2d 881 (7th Cir. 1932); Avon Periodicals v. Ziff-Davis Pub. Co., supra, the Court is called upon in such a suit to balance these equities and interests, which require it to consider various factors, including the identity or similarity of the names, the similarity of the businesses of the respective parties, the extent to which the name in dispute describes the business conducted by each, the degree to which confusion may be created in the mind of the public, and any possible bad faith on the part of the defendant. Eastern Const. Co. v. Eastern Engineering Corp., supra. By their very nature some of these factors are so hazy and grayish in nature that a summary judgment cannot be granted merely upon perusal of affidavits, except in those rare instances where the facts are so black and white in nature that it can be stated unequivocally that there is no genuine issue as to any material fact and no issues to be resolved at a trial. See G. D. Searle & Co. v. Chas. Pfizer & Co., 231 F.2d 316 (7th Cir. 1956); Sanitized, Inc. v. S. C. Johnson & Sons, Inc., 23 F.R.D. 230 (S.D.N.Y.1959); Flint v. Oleet Jewelry Mfg. Co., 133 F.Supp. 459 (S.D.N.Y.1955).

■ Having in mind the foregoing essential elements of the plaintiff's claim and the heavy burden upon the plaintiff to show that no genuine issue exists as to any material fact, see Rule 56, F.R.Civ.P., the papers before the Court reveal that while the plaintiff makes out a strong case for relief, genuine issues have been raised as to certain material elements of the claim, which necessitate that the motion be denied. Since the motion also prays, in accordance with Rule 56, for a specification of those facts that appear to be without substantial controversy, the Court finds the uncontroverted facts, except to the extent indicated below, to be as follows:

Plaintiff, which was incorporated in New Jersey under the name of National Portrait Studios, Inc., has been in the business of developing, printing and processing film since May 23, 1958 when Abraham Rothbard (now the president of plaintiff) and his brothers Harold Rothbard and Bernard Rothbard, who were the sole stockholders of National Portrait Studios, Inc., which is the same corporation as plaintiff, the name having been changed to National Color Laboratories, Inc. on April 7, 1961, filed a certificate in Essex County, New Jersey, certifying that they were doing business as "National Color Laboratories" at 779 South Eighteenth Street, Newark, plaintiff's business address at that time.

Since 1958 plaintiff has earned considerable prestige and good will for the name "National Color Laboratories" with photographers in many parts of the United States, who have been the major beneficiaries of its services. This has been accomplished through extensive national and local advertising, begun immediately after the filing of the aforementioned certificate on May 23, 1958, and through alert and aggressive management, which has enabled plaintiff's volume of business to increase from $400,000 in 1961 to $1,000,000 in 1966.[3]

---

**3.** Defendants' contention that plaintiff cannot claim use of the name back to 1958 lacks any substance, since plaintiff had adduced extensive uncontroverted documentary proof of its open and notorious use of the name at least since June, 1958, prominently displaying it at its place of business, listing it in telephone directories, dealing with and establishing credit with suppliers in the name, and advertising the name in trade journals and magazines, many of which were submitted with this motion and are not questioned by defendants. Short of changing its corporate name, a step taken by the plaintiff in 1961, it was not permitted as a corporation to file a trade name certificate in New Jersey, its domicile.

Defendant Philip Rohold is the president and principal shareholder of defendant Philip's Foto Co., Inc. ("Foto Co." herein) which has been engaged in the mail order business of processing and developing black and white film negatives since 1942 and in the mail order business of processing color film negatives since 1957, with its laboratory and principal office at Elmsford, New York. Foto Co.'s original predecessor in interest in the trade name in issue was a partnership consisting of Frank Nadaline and Harold Rosen.

On February 1, 1962, Foto Co. acquired from Fotochrome, Inc. (a Delaware corporation engaged, among other things, in the processing of film and having its principal office and place of business in Long Island City), the latter's mail order film processing business and various trade names represented by it to have been used in that business, including the name "National Color Labs". Since November 1959, Fotochrome, Inc.'s chief executive and principal stockholder, Frank Nadaline, Jr., a partner Harold Rosen, and later Fotochrome, Inc. itself, had used the name "National Color Labs", among others, in soliciting mail order film processing business. This is attested to by advertisements appearing in the November and December 1959 issues of "Popular Photography" and by a certificate filed on November 9, 1959, in the Bronx County Clerk's Office by one Sylvia Scofield (Nadaline's wife) and Malvina Jentoft (Rosen's wife) to the effect that they were doing business under the name of National Color Labs at 1874 Washington Avenue, New York, N. Y.

An issue exists as to whether the defendants' predecessors (Nadaline, Rosen and Fotochrome, Inc.) had used the trade name "National Color Labs" prior to November 1959. Although the defendants contend that the name was used by the partnership of Nadaline and Rosen as early as 1957, no objective proof is offered in support of such prior use, and the surrounding circumstances, including the filing of the Bronx County certificate in November 1959 and the fact that the earliest advertisements submitted by the defendants are dated November 1959, lead the Court to the conclusion that if the issue were to be resolved solely on the papers, it would find that the defendants did not commence using the name until November 1959. However, in view of Nadaline's affidavit to the contrary, defendants should be permitted the opportunity to present evidence on this issue at trial where each side will have the right to cross-examination.

The issue of priority of use is significant because of its relevance to the question of whether the defendants intentionally and fraudulently palmed off its services as those of the plaintiff, as alleged by the plaintiff. If the defendants had used the name prior to May 23, 1958, the plaintiff's contention that they had been motivated by a desire to poach upon valuable good will thereafter established by plaintiff for the substantially similar name "National Color Laboratories", would be greatly weakened. If, on the other hand, the Court finds at trial that the defendants did not commence using the name "National Color Labs" until November 1959, there is evidence from which a deliberate intent to defraud might be inferred, in which event injunctive relief would be justified, a court of equity being loath to countenance such a dishonest plan. Eastern Const. Co. v. Eastern Engineering Corp., supra; see Eastern Wine Corp. v. Winslow-Warren, Ltd., 137 F.2d 955 (2d Cir.), cert. denied, 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452 (1943); Federated Purchaser, Inc. v. Federated Electronics, Inc., 34 Misc.2d 108, 228 N.Y.2d 298 (Sup.Ct.1962), affd. mem., 18 A.D.2d 795, 236 N.Y.S.2d 939 (1st Dept. 1963). The substantial similarity of the names, arrangements made by Nadaline and Rosen with their respective wives to have the trade name "National Color Labs" registered in their wives' maiden names rather than in their own names. the defendants' later failure to disclose their identity as the user of the name after acquiring it from Fotochrome (such as by registering it as a

corporate name, listing it in a telephone or other directory, or giving an address that would identify the defendants as the users), the tactics of their counsel in suggesting that the name had been registered in 1958 when in fact it had not been registered in Bronx County until 1959, the misleading advice of earlier counsel for Fotochrome, Inc. to the effect that it was no longer using the name, without informing plaintiff that it had been transferred to the defendants who were continuing to use it, the failure of the defendant to endorse the name of "National Color Labs" on the check submitted by plaintiff's counsel in payment for film processed by it—all of these suspicious circumstances provide the basis for an inference that the defendants were engaged in an intentional misuse of the name. However, it is obvious that the issues of priority of use and of intent to mislead cannot be resolved upon this motion for summary judgment, and that they must await trial.

There appears to be some confusion on the part of the members of the public arising out of the use of substantially the same name by the plaintiff and the defendants. For instance, plaintiff has furnished affidavits, which are not controverted, by Hal Halpern, a South Orange, New Jersey photographer and Bob Roberts, a manufacturer of photograph albums, to the effect that they received defendants' mailings under the name "National Color Labs" and were led to believe that the plaintiff was now offering its superior quality services at a cheaper price. The nature and extent of the confusion, however, remains an issue to be tried. The defendants contend that the plaintiff primarily services professional photographers, while they solicit amateurs. The exhibits attached to the moving papers do indicate that plaintiff's advertisements appear principally in publications directed to the professional photographer. On the other hand, it may be that amateurs purchase and use the same publications, most of which appear to be sold publicly at a specified price per copy. Furthermore, there is no representation on the part of the defendants that their mailing lists do not include professional photographers, and it may very well be that the distinction for present purposes is an illusory one, since the general type of service offered by both sides is the same, i. e., the processing and developing of film for the benefit of photographers. Since the basic service is the same, it seems logical that a professional photographer on the defendants' mailing list would be misled by the defendants' mailings into believing that plaintiff was now offering its service at a reduced price, which the professional would patronize, thereby depriving the plaintiff of sales, and if the defendants' service proved to be inferior, the plaintiff might lose the customer permanently. Certainly this appears to have been the impression gained by Mr. Halpern, but we must await trial to determine whether such confusion was sufficiently widespread to warrant injunctive relief, since the present record is inadequate to resolve that issue.[4] See G. D. Searle & Co. v. Chas.

4. Plaintiff also claims that it has established rights under New York's anti-dilution statute (Gen.Bus.L. § 368–d) which provides: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade-name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." The trouble with this argument is that, in order to establish rights under this statute, plaintiff must establish that it has rights in the trade name *vis a vis* the defendant. As was pointed out above, questions of fact exist as to this issue. Furthermore, there is authority that, despite the wording of the statute, a plaintiff, in order to obtain an injunction under the statute, must demonstrate a likelihood of confusion or unfair intent on defendant's part. Field Enterprise Educational Corp. v. Grosset & Dunlap, Inc., 256 F.Supp. 382 (S.D.N.Y.1966); Cue Pub. Co. v. Colgate-Palmolive Co., supra. As was shown, supra, questions of fact also exist with respect to these issues.

Pfizer & Co., supra; Sanitized, Inc. v. S. C. Johnson & Sons, Inc., supra; Flint v. Oleet Jewelry Mfg. Co., supra.

For all of the foregoing reasons, the motion is denied.

So ordered.