271 F.2d 646
 123 U.S.P.Q. 368
 SPEEDRY PRODUCTS, INC., Plaintiff-Appellant,
v.
DRI MARK PRODUCTS, INC., Suburban Dyers & Finishers, Inc.,
Milton Dinowitz d/b/a Commodore Stationers, Lanart
Associates, Inc., Milton Landin and
Arthur S. Romm, Defendants-Appellees.
 No. 335, Docket 25550.
 United States Court of Appeals Second Circuit.
 Argued June 9, 1959.
Decided Nov. 6, 1959.
 
 Julius Kass, New York City (Bandler & Kass, Joseph Halper, New York City, on the brief), for plaintiff-appellant.
 Joseph Goldberg, New York City, for defendants-appellees, Dri Mark Products, Inc., Suburban Dyers and Finishers, Inc., Milton Dinowitz d/b/a Commodore Stationers and Milton Landin.
 Simon Sheib, New York City (Paul N. Sternbach, New York City, on the brief), for defendants-appellees, Lanart Associates, Inc., and Arthur S. Romm.
 Before HINCKS and MOORE, Circuit Judges, and SMITH, District Judge.
 MOORE, Circuit Judge.
 
 
 1
 Speedry Products, Inc., plaintiff-appellant (Speedry) appeals from an order denying its motion for a preliminary injunction by which it sought to enjoin defendants-appellees (collectively referred to as 'Dri Mark') from importing, manufacturing and selling a marking device known as 'Dri Mark' on the grounds that it infringed the patents on Speedry's device known as 'Magic Marker' and that it 'is so similar in appearance to the 'Magic Marker' that it will deceive the public into thinking that it comes from the same source as the 'Margic Marker'.' Upon argument of the motion Speedry for purposes of the preliminary injunction relied only upon its claim of unfair competition. The court, after comparing the two markers, found that because of readily recognizable differences 'The likelihood of confusion as to source is, to say the least, extremely doubtful'; that to grant the injunction requested could secure for Speedry the most important part of the relief that it could receive after trial; and that there was no showing of irreparable damage.*
 
 
 2
 The amended complaint contained three causes of action: (1) patent infringement; (2) trademark infringement; and (3) unfair competition in that defendants' use of 'Dri Mark' (an alleged copy of 'Margic Marker'), its style, dress, container and packaging were 'all so similar to the 'Magic Marker' as to mislead the public into believing that the 'Dri Mark' and the Magic Marker' are produced from the same source,' and that the public would purchase 'Dri Mark' in the erroneous belief that it was the 'Margic Marker.'
 
 
 3
 This allegation constitutes a good cause of action in the field of unfair competition known as 'palming off' or 'passing off.' Traditionally this type of action has required proof that a fraud is being perpetrated, i.e., that the defendant is so foisting his product on the market that there is resulting confusion or likelihood of confusion as to its source in the mid of the buying public (1 Callman, Unfair Competition and Trade-Marks (Sec. Ed. 1950) (p. 40)).
 
 
 4
 In order to succeed in its application for a preliminary injunction Speedry must show at least a reasonable probability of success in its main action, Chas. D. Briddell, Inc. v. Alglobe Trading Corp., 2 Cir., 1951, 194 F.2d 416, and that irreparable damage would result from a denial of the motion, Joshua Meier Company v. Albany Novelty Mfg. Co., 2 Cir., 1956, 236 F.2d 144. Although in advance of the trial no final conclusions can be stated as to the facts, nevertheless an initial survey must be made in order to determine whether Speedry is entitled to preliminary relief. 'The critical question of fact at the outset always is whether the public is moved in any degree to buy the article because of its source and what are the features by which it distinguishes that source' (Briddell, supra, 194 F.2d page 419).
 
 
 5
 The competing products are hand ink marking devices consisting basically of small glass bottles containing various colored inks which pass by capillary action to felt nibs in a small tube protruding from the bottle and thence to the desired writing or marking surface. The color of the ink can be identified by a matching colored cap located over the nib. Both products, plaintiff's 'Magic Marker' and defendants' 'Dri Mark,' are generally similar as to size and shape. The size and shape of any hand makring device is necessarily limited. It must be small enough to be held in the hand; yet be large enough to contain a sufficient quantity of the marking fluid and be tapered enough to enable the writing point or wick to be comparatively sharp.
 
 
 6
 The scope of potential size and shape of a marking device is definitely limited by its function and is somewhat analogous to that of the fountain pen. It can scarcely be argued that the first producer of a fountain pen would have been entitled to a perpetual monopoly via the unfair competition route of its size and shape. Although use of such generic terms as 'functional' and 'non-functional' is likely to lead to oversimplification and arbitrary classification, size and shape of an article of the type of these marking devices are highly functional. The mere copying of functional features, absent some fraudulent factor, is not unlawful. A contrary holding would be an unwarranted extension of patent and copyright protection.
 
 
 7
 Speedry argues that the 'New York courts have held that the law of unfair competition no longer requires that plaintiff establish a secondary meaning for its product or business' citing Santa's Workshop v. Sterling, 3rd Dept.1953, 282 App.Div. 328, 122 N.Y.S.2d 488, Avon Periodicals v. Ziff-Davis Pub. Co., 1st Dept. 1953, 282 App.Div. 200, 122 N.Y.S.2d 92, and Oneida Ltd. v. National Silver Company, Sup.Ct. Madison Co. 1940, 25 N.Y.S.2d 271. Several recent federal cases are also said to support this proposition. Thus Speedry, in effect, represents that a cardinal principle of unfair competition, i.e., secondary meaning, has been completely discarded and repudiated as a requisite factor. Analysis of the cases does not justify this conclusion.
 
 
 8
 In Mastercrafters Clorck & Radio Co. v. Vacheron & Constantin-Le C. W., 2 Cir., 1955, 221 F.2d 464, it was the identity of appearance of the clocks which rendered the conduct actionable. In Noma Lites v. Lawn Spray, 2 Cir., 1955, 222 F.2d 716, the advertising and packaging of the products were so similar 'as to entitle the plaintiff under state law to protection even without a preliminary showing of secondary meaning.' But even there the court did not repudiate this factor, saying 'The time period necessary for a product to acquire a secondary meaning may be equite short' (at page 717) and expressed no opinion 'as to whether on the actual trial such secondary meaning can or cannot be shown.' Likelihood of deception was the basis of the decisions in Fancee Free Mfg. Co. v. Fancy Free Fashions, D.C.S.D.N.Y.1957, 148 F.Supp. 825 and Gaylord Products v. Golding Wave Clip Co., D.C.W.D.N.Y.1958, 161 F.Supp. 746.
 
 
 9
 Assuming the applicability of the New York law (Maternally Yours v. Your Matermity Shop, 2 Cir., 1956, 234 F.2d 538), an analysis of the New York cases does not bring forth the conclusion Speedry urges. Santa's Workshop v. Sterling, supra, first came before the Appellate Division on an appeal from an order denying a motion to dismiss the complaint for failure to state facts sufficient to constitute a cause of action. As clearly disclosed in the per curiam opinion, there was a sufficient unfair competition allegation in the complaint. However, from a single sentence in this brief per curiam, quite unnecessary to the decision, stem the arguments made subsequently that the law of unfair competition has been radically changed in New York State. The two cases cited in support of the statement were International News Service v. Associated Press, 248 U.S. 215, 235, 237, 39 S.Ct. 68, 63 L.Ed. 211, and Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713. The International News case rose out of a unique set of facts dealing with two large organizations engaged as competitors in the gathering, distribution and publication of news in newspapers throughout the United States. Because of the complexity of the facts the case is sui generis. Even there the decision was based largely upon fraud, the court finding that 'Besides the misappropriation, there are elements of imitation, of false pretense, in defendant's practices' (248 U.S. at page 242, 39 S.Ct. at page 73). In the Hanover Star Milling case the misappropriation of words was even more flagrant, both parties using 'Tea Rose' as a brand of flour. There the court found that 'the tendency of the similarity of the brand and accompanying design, and of the make-up of the packages, to mislead ultimate consumers, is so evident, that it seems to us a case of unfair competition is made out' (240 U.S. at pages 423-424, 36 S.Ct. at page 364).
 
 
 10
 On appeal from a judgment in the plaintiff's favor in Santa's Workshop v. Sterling, 3rd Dept. 1956, 2 A.D.2d 262, 153 N.Y.S.2d 839, the court affirmed but reduced the judgment, one judge dissenting and voting to dismiss. The facts showed such an obvious theft of the plaintiff's business ideas, physical layout and advertising that the fraudulent nature of the defendant's competition was most apparent. Here most probably was a good example of the creation of a 'secondary meaning' within a short time-- the possibility which this court pointed out in Noma Lites v. Lawn Spray, supra. The plaintiff in Santa's Workshop, in July 1949, had set up a public entertainment and sales facility on one of the Adirondack Mountains which he called 'Santa's Work Shop.' He established a village, centering around Santa, his home, his work shop, St. Nick's Chapel, and his friendly animals. The enterprise was extensively advertised and from the outset became highly successful. The defendant, also in the Adirondack region, almost immediately thereafter (1950) changed his advertising to 'See Santa's Friendly Animals' and by road signs indicated that here, too, Santa Claus had an abode. Since one of the main automobile roads passed one of the defendant's places of business en route to the plaintiff's needless to say, the defendant definitely played upon and capitalized upon the plaintiff's unique village and his advertising thereof. Because of these factors and the proximity of the two competing places of business, there would be good reason for a court of equity to restrain the defendant's conduct and little difficulty in holding that plaintiff's establishment could almost immediately acquire 'secondary meaning' in the minds of the public traveling in that area. The decision, therefore, in favor of the plaintiff in that case could easily have been grounded on a finding that secondary meaning had been quickly acquired. In any event the facts clearly demonstrate the type of predatory business conduct that a court of equity will enjoin whether or not there has been a showing of secondary meaning.
 
 
 11
 Because of failure to recognize the distinctions between the palming off cases and the misappropriation cases, both of which categories are generally regarded as falling within the field of unfair competition, much confusion has crept into the state decisions[1] and thence into the federal decisions.[2] It is due to that confusion that courts occasionally have said that secondary meaning is not a necessary factor without restricting that observation to the misappropriation cases in which recovery seems not to depend upon the confusion or deceit of the public. Thus in such of these misappropriation cases as did not involve a palming off, there was a certain logic in saying that proof of a secondary meaning for a plaintiff's service or product is not essential for recovery.
 
 
 12
 Guided by these principles the facts do not meet the standards necessary to support a preliminary injunction. An examination of the two markers shows that there is no such likelihood of confusion either as to source or as to the product as to justify preliminary relief. The coloring on the 'Dri Mark' cover is quite distinct from the 'Magic Marker'; the front of the 'Magic Marker' is predominantly red with some black and white; the front of 'Dri Mark' is predominantly dominantly white with some red. While the back of both markers is basically red lettering on a white background, there are marked differences between them; the lettering on 'Dri Mark' is about half the size as on the 'Magic Marker' and some of the lettering of the 'Magic Marker' is in white contrasted against three wide red strips whereas the 'Dri Mark' is solid white with the red letters. The lettering itself is substantially different. The trade names are prominently displayed on each. The words and their arrangement on the covers are quite distinct. Although both use the colored caps to identify the color of the ink in the bottle ('Magic Marker' has 9, 'Dri Mark' has 12) Speedry's is long, narrow and made of metal, while 'Dri Mark's' is wider, stubbier and made of plastic. The packaging is entirely different. The 'Magic Marker' is placed in a cardboard container, twelve to a box, separated by an egg-type spacer. 'Dri Mark' is placed in an individual container and six of these are then shipped in a packing carton. The wide price differential is also a significant factor. It is true that the proof indicates that a Speedry marker was sent to Japan for the purpose of having a similar marker made and produced there for sale in the United States. Production under different labor and living standards may well account for the wide price differential. However, it is not for the courts to pass upon the economic or public policy considerations of the situation buy only upon the unfair competition aspects.
 
 
 13
 In addition, on an entirely separate ground the order below must be affirmed. Speedry failed to show that irreparable harm would result should the preliminary injunction be denied.
 
 
 14
 The order appealed from is affirmed.
 
 
 
 *
 A previous motion for a preliminary injunction had been denied with leave to renew. Dimock, D.J., Dec. 5, 1958
 
 
 [1]
 Recovery allowed on theory of palming off without proof of secondary meaning: Avon Periodicals v. Ziff-Davis Pub. Co., 282 App.Div. 200, 122 N.Y.S.2d 92; Catalina, Inc. v. Ganis, 207 Misc. 1068, 142 N.Y.S. 65; Murray v. Miller, Sup., 142 N.Y.S.2d 857, modified 3 A.D.2d 1008, 164 N.Y.S.2d 257. Cf. Santa's Workshop v. Sterling, 282 App.Div. 328, 122 N.Y.S.2d 488
 Proof of secondary meaning required: Mavco, Inc. v. Hampden Sales Association, 273 App.Div. 297, 77 N.Y.S.2d 510; Herzman Scarfs v. Baar & Beards, Inc., 203 Misc. 449, 118 N.Y.S.2d 380; American Merri-Lei Corp. v. Jet Party Favors, Sup., 123 N.Y.S.2d 136. Cf. Pocket Books, Inc. v. Meyers, 292 N.Y. 58, 54 N.E.2d 6.
 
 
 [2]
 Cases containing holdings or dicta that proof of secondary meaning is not necessary in product copying cases: Noma Lites v. Lawn Spray, 2 Cir., 222 F.2d 716; Upjohn Company v. Schwartz, 2 Cir., 246 F.2d 254, 261-262; Joshua Meier Co. v. Albany Novelty Mfg. Co., 2 Cir., 236 F.2d 144, 148; Norwich Pharmacal Co. v. Sterling Drugs, Inc., D.C., 167 F.Supp. 427, appeal pending; Flint v. Oleet Jewelry Manufacturing Co., D.C., 133 F.Supp. 459
 Cases taking the position that proof of secondary meaning is necessary in product-copying cases: Chas, D. Briddle, Inc. v. Alglobe Trading Corp., 2 Cir., 194 F.2d 416; Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, 2 Cir., 221 F.2d 464; American Safety Table Co. v. Schreiber, 2 Cir., 269 F.2d 255, 266; Kramer Jewelry Creations v. Capri Jewelry, D.C., 143 F.Supp. 120.