Edgar J. Nathan, Jr., J.
In this action for unfair competition, plaintiffs seek to enjoin the defendant from using the word “Cue” as part of the title of the business conducted by him.
Cue Magazine has been published by the plaintiffs continually since 1935. Its success has been noteworthy. Starting with an initial circulation of approximately 1,500, the magazine has steadily increased its circulation over the years to a present average weekly paid circulation in excess of 150,000 and an actual readership far greater. Large sums of money have been expended on advertising and promoting the publication.
Besides providing reviews of current motion pictures and legitimate stage productions, the magazine furnishes lists of *189 restaurants, plays, motion pictures and other forms of diversion and amusement, their cost, and where they may he found. It also issues its “ seal of approval ” to those restaurants in the metropolitan New York area which, in the opinion of its editors, would satisfy its reader’s culinary tastes. Broadly speaking, Cue is designed to reach those members of the general public who are seeking entertainment.
The defendant is engaged in the ticket brokerage business within the metropolitan New York area. His only place of business is in Manhattan. In 1957, after having acquired a knowledge of the business by working for a large ticket brokerage firm for approximately seven years, he opened his own business under the name “ Cue Theater Tickets ”. Because of the similarity of names between the magazine and the ticket brokerage business, the plaintiffs bring this action to enjoin the defendant from the use of the word “ Cue ” in his business name, alleging that this may create the impression in the minds of the general public that the two enterprises are related, to the detriment of the plaintiffs.
The title “ Cue ” was registered by the plaintiffs in March, 1936 as a trade-mark in the United States Patent Office under the Trade-Mark Act of 1905. That registration was republished in October, 1948 under the Trade-Mark Act of 1946, commonly known as the Lanham Act, and renewed in December, 1955. Therefore, plaintiffs might have chosen to pursue their remedies in the Federal District Court for the Southern District of New York. This they have not done.
The pleadings also make it clear that the plaintiffs are not proceeding under section 964 of the New York State Penal Law, or under section 368 of the New York State General Business Law. The court is here faced with a common-law action based upon unfair competition.
The definitions of what constitutes unfair competition are legion (1 Nims, Unfair Competition and Trade-Marks [4th ed., 1947], § 4) but simply stated, “ This is nothing but a convenient name for the doctrine that no one should be allowed to sell his goods as those of another ”. (Vogue Co. v. Thompson-Hudson Co., 300 F. 509, 512 [C. C. A. 6th, 1924, Denison, J.].) The doctrine is as difficult to apply as it is simple to state, and in the final analysis each case depends upon its particular facts.
The failure of the plaintiffs to seek a trade-mark registration in New York State does not protect the defendant if in fact there is unfair competition (Dell Pub. Co. v. Ultem Pubs., 171 Misc. 159). However, before the injunction here sought can issue, it is encumbent upon the plaintiffs to establish that the *190 word “ Cue ” has acquired a secondary meaning in and around the metropolitan New York area for those members of the public who concern themselves with the pursuit of entertainment. While, as defense counsel has so ably pointed out, it is extremely difficult for a word in current common usage to acquire a secondary meaning as opposed to a word that has passed out of the language or is a fanciful creation of its user, this is not impossible (see Conde Nast Pubs. v. Vogue School of Fashion Modelling, 105 F. Supp. 325; Triangle Pubs. v. Hanson, 163 F. 2d 74).
Upon a review of all the evidence, the court finds that the plaintiffs have succeeded in attaching a secondary meaning to the word “Cue” in and around the metropolitan New York area and that the injunction should issue. It is quite clear that, at the present time at least, there is no direct competition between the parties. However, both operate in the general field of entertainment and our courts have consistently held that it is not essential for parties to be in competition- with each other in order to sustain an injunction (Long’s Hat Stores Corp. v. Long’s Clothes, 224 App. Div. 497; Maison Prunier v. Prunier’s Restaurant & Cafe, 159 Misc. 551; Tiffany & Co. v. Tiffany’s Prods., 147 Misc. 679, affd. 237 App. Div. 801, affd. 262 N. Y. 482).
There is little if any direct evidence to suggest that the defendant was induced to select “ Cue” by a desire to trade upon the reputation of the plaintiffs and deliberately to mislead the public into believing that there is a connection between the parties. However, the defendant was evasive when questioned as to how he came to include the word “ Cue ” in the title of his business, and his statement that he is not familiar with Cue Magazine is incredible in view of his activity in and knowledge of the entertainment field in the metropolitan New York area over a period of years. Be that as it may, once a word has acquired a secondary meaning, it is of no* consequence that the defendant did not intend an association with the wares of the plaintiffs if that association does in fact occur (see Burrough, Ltd., v. Ferrara, 6 Misc 2d 692; Sullivan v. Sullivan Radio & T. V., 1 A D 2d 609).
Moreover, it is not necessary that the plaintiffs suffer any pecuniary damage for an injunction to issue. While it is true that Cue Magazine was, for a short period of time, engaged in the sale of theatre tickets to its subscribers and therefore, in a limited sense, in the ticket brokerage business, this activity has long since been discontinued and the magazine does not now sell theatre tickets to the public or anyone else. In that sense the *191 parties are not competitive. However, as Mr. Justice Steuer of this court has so aptly stated in Burrough, Ltd., v. Ferrara (supra, pp. 693-694): “Association and identification in the public mind is more than a mere possibility * * # It is not disputed that the plaintiff is not required to put its reputation in defendant’s hands, no matter how capable those hands may be.” That is precisely the danger that exists here.
In cases of this type the test is whether the use by defendant of plaintiffs ’ name or mark is likely to confuse and mislead the public and injure plaintiffs’ name, reputation or business (Sullivan v. Sullivan Radio & T. V., supra). In this regard, it is significant that the defendant was free to choose any number of names for his business, including his own. In addition, within a very short period of time after he began his business, the defendant was put on notice by the plaintiffs that the plaintiffs objected to his use of the word “Cue”. It is difficult to envision how the defendant can be harmed by changing the title of his business; it is incontrovertible that harm may accrue to the plaintiffs by the continued use by the defendant of the word “ Cue ” in his business name. The defendant is, therefore, enjoined from using the word “ Cue ” in its business name, or in any other form or manner. The defendant will also desist from doing any act or thing that may associate his business with that, of the plaintiff in the minds of the public. As plaintiffs have not sustained any monetary damages, they do not seek an accounting for profits.
Findings of fact and conclusions of law having been waived, the foregoing represents the decision of the court in accordance with section 440 of the Civil Practice Act.
The plaintiffs will have taxable costs and disbursements. Settle judgment on notice.