**ATLANTIC MONTHLY COMPANY,**
Plaintiff,

v.

**FREDERICK UNGAR PUBLISHING CO., Inc., Defendant.**

United States District Court
S. D. New York.
July 15, 1960.

**222**

Weil, Gotshal & Manges, New York, City. for plaintiff; Horace S. Manges, Jacob F. Raskin, Marshall C. Berger, New York City, of counsel.

Alfred A. Rosen, New York City, for defendant.

METZNER, District Justice.

Plaintiff moves for a temporary injunction alleging trademark infringement and unfair competition arising out of the defendant's use of the words "Atlantic Paperbacks". The plaintiff, Atlantic Monthly Company, and its predecessors have continuously published a magazine called "The Atlantic Monthly" since 1857. It registered the trademark "Atlantic Monthly" in the United States Patent Office in 1921 and renewed that registration in 1941. Huge sums of money have been spent over the years in advertising this magazine, and it has a current monthly circulation of over 260,000 throughout the United States.

In 1917 plaintiff organized a subsidiary known as "The Atlantic Monthly Press, Inc." and through this subsidiary published books under the trademark and trade name "Atlantic Monthly Press". In 1925 the goodwill and assets of Atlantic Monthly Press, Inc. were sold to Little, Brown & Company, Inc. The plaintiff entered into an arrangement with Little, Brown & Company, Inc. for a co-operative venture to publish books under the trademarks and trade names "Atlantic Monthly Press" and "Atlantic". It appears that the contribution of plaintiff to this venture was the selection and editing by its editorial staff of manuscripts to be published by Little, Brown & Company. Over 700 books have been published under this agreement. Approximately $1,500,000 has been spent in advertising these books.

The defendant is a book publisher who in March of this year announced that it was going to publish a series known as "Atlantic Paperbacks". Defendant has been in the publishing business since 1947 and has published three other series of books. The "Atlantic Paperback" series is devoted to reprinting existing works from European literature, history and religion.

The principles governing claims of trademark infringement and

unfair competition are essentially the same. Avon Shoe Co., Inc. v. David Crystal, Inc., 2 Cir., 1960, 279 F.2d 607. The question is whether the respective marks are likely to cause confusion or mistake or deception as to the source of origin of defendant's books. If the court were presented with a situation based on the defendant's publishing a magazine somewhat akin to the "Atlantic Monthly" published by the plaintiff, there still would be doubt as to whether a temporary injunction should issue. Time, Inc. v. Ultem Publications, 2 Cir., 1938, 96 F.2d 164. At this stage of the proceedings with only the books before the court, and without any other proof of deception or likelihood of confusion in the public mind, the court is presented with a question of law or a mixed question of law and fact as to whether "Atlantic Paperbacks" infringe the registered trademark "Atlantic Monthly". I cannot so find because it is the combination of the words "Atlantic" and "Monthly" which designates the source of plaintiff's product. I cannot at this time find that the word "Atlantic" has acquired a secondary meaning in the publishing field so as to pre-empt the use of that word by anyone else in connection with publishing activities. Cf. Warshauer & Franck, Inc. v. Belmar Fashions, Inc., D.C.S.D.N.Y.1941, 43 F. Supp. 138. Defendant has set forth in its affidavit 7 other publications using the word "Atlantic" in their titles.

In Maternally Yours v. Your Maternity Shop, 2 Cir., 1956, 234 F.2d 538, at page 543, the court indicated the indicia for determining whether there is a likelihood of consumer confusion. These indicia consist of an intent to palm off products as those of another, degree of similarity between the trademarks in appearance and suggestion, the strength of the plaintiff's mark, the area and manner of concurrent use, and the degree of care likely to be exercised by purchasers. See also J. R. Wood & Sons, Inc. v. Reese Jewelry Corp., 2 Cir., 1960, 278 F.2d 157.

Such cases as Maternally Yours v. Your Maternity Shop, supra; Triangle Publications, Inc. v. Rohrlich, 2 Cir., 1948, 167 F.2d 969; Tiffany & Co. v. Tiffany Productions, 147 N.Y.Misc. 679, 264 N.Y.S. 459, affirmed 237 App.Div. 801, 260 N.Y.S. 821, affirmed 262 N.Y. 482, 188 N.E. 30; Cue Publishing Co. v. Kirshenberg, 1960, 22 Misc.2d 188, 198 N.Y.S.2d 993; Dell Publishing Co. v. Stanley Publications, Sup.1959, 188 N.Y.S.2d 605, were all decided after trial and not upon affidavits.

We now come to the second activity engaged in by plaintiff—its relationship with Little, Brown & Company in the publication of hardback books. Plaintiff has submitted one of its recently published books entitled "John Paul Jones", which has on the bottom of the spine the word "Atlantic" in script and immediately thereunder in block lettering "Little, Brown". The title page contains the name of the book, the name of the author, a publisher's symbol identified over the years with plaintiff's publications, and at the bottom the words "An Atlantic Monthly Press Book" on one line and "Boston · Little, Brown and Company · Toronto" on the second line.

Defendant has submitted two books of the Atlantic Monthly Press series, neither of which has the word "Atlantic" on the spine. On the title page of both books the symbol is shown with the words "Atlantic Monthly Press Publication" written around the symbol. The bottom of the title page reads "Boston Little, Brown, and Company 1938".

Defendant's books have various legends at the bottom of the spine. Some say "Atlantic Paperbacks", some have only the initials "A. P." and some have only "Ungar". Variously placed on the cover they all have the words "Atlantic Paperbacks" in block letters. The title page has, in addition to the title and name of the author, the words "Frederick Ungar Publishing Co. New York" at the bottom. The backs of all of these books have printed at the bottom "Atlantic Paperbacks" on one line and immediately underneath "Frederick Ungar Publishing Co." with its address.

As pointed out above, plaintiff's agreement with Little, Brown & Company is to select original works for publication. To this extent I presume its claim is that the book purchasing public relies on the literary taste of its staff when it purchases a particular book. The defendant is not publishing original works, but is reprinting in paperback editions existing works. While it is true that injunctions will issue to protect a party's right to expand into another field normally within the contemplation of its original endeavors (Avon Shoe Co., Inc., supra), here again there is nothing in the affidavits to warrant the drastic remedy of injunction.

Plaintiff has submitted on this motion the affidavit of the treasurer of the Atlantic Monthly Company, which reviews the business aspects of the plaintiff. There is also submitted the affidavit of a partner of the law firm that is general counsel for plaintiff in Boston, Massachusetts. That affidavit refers to correspondence with the defendant regarding the publication of its paperback series. Finally, there is an affidavit from the firm of attorneys here in New York representing the plaintiff on this motion, describing the affiant's purchase of a book published by the defendant, which is an exhibit on this motion.

There is no independent showing of deception or likelihood of confusion on the part of the public as required by the principles applicable to this type of case. In addition, the question of extent of reliance by book purchasers on the name of the publisher over and above reliance on the content and authorship of the book, or on book reviews, must be subject to a full trial. See Pocket Books, Inc. v. Meyers, 1944, 292 N.Y. 58, 54 N. E.2d 6.

The remedy of temporary injunction is a drastic one, and I cannot find a justification in the papers for holding that immediate and irreparable injury will ensue if this temporary injunction is not granted. Huber Baking Co. v.

Stroehmann Bros. Co., 2 Cir., 1953, 208 F.2d 464; Avon Shoe Co. v. David Crystal, Inc., D.C.S.D.N.Y.1953, 117 F.Supp. 548. Motion denied. Settle order.