The **FUND OF FUNDS, LIMITED** and
**I. O. S., Ltd. (S. A.), Plaintiffs,**

v.

**FIRST AMERICAN FUND OF FUNDS, INC., Defendant.**

**No. 66 Civ. 2341.**

United States District Court
S. D. New York.
June 27, 1967.

Robert J. Haft, Ross, Stamer, Wolf & Haft, New York City, for plaintiff.

Milton Mound, Mound, Belfer & Greenburg, New York City, for defendant.

MOTLEY, District Judge.

*Opinion on Motion for Summary Judgment*

Plaintiff, The Fund of Funds, Limited, was incorporated in 1962 under the laws of the Province of Ontario, Canada. Its principal place of business is in Geneva,

Switzerland. The name used by plaintiff for its mutual fund investment business is The Fund of Funds. Plaintiff has used this name since its incorporation on August 9, 1962. The Fund of Funds is an open-end mutual fund, the investment portfolio of which consists mainly of the shares of 20 United States mutual funds and 9 companies managing mutual funds. The Fund of Funds, as of June, 1966, had net assets in excess of $400,-000,000. The United States mutual fund shares which comprise the portfolio of The Fund of Funds were purchased for it by broker-dealers in the United States.

■ The Fund of Funds, Ltd., is one of several companies established by the other plaintiff, Investors Overseas Services, Limited, (I. O. S.). This plaintiff is a corporation organized under the laws of the Republic of Panama with its principal place of business also in Geneva, Switzerland. I. O. S. is the exclusive distributor of the shares of The Fund of Funds which are sold outside of the United States to non-United States citizens and nationals.[1]

---

1. I.O.S. became registered as a broker-dealer with the United States Securities and Exchange Commission (S.E.C.) on June 10, 1960. Investors Continental Services, Ltd. (I.C.S.) is a wholly owned subsidiary of I.O.S. with principal offices in New York City. I.C.S. became registered with the S.E.C. as a broker-dealer on November 18, 1958. On February 3, 1966, the S.E.C. instituted Administrative Proceedings against these two companies [Sections 15(b) and 15(a) of the Securities Exchange Act of 1934] and the president, vice president, senior vice president, executive vice president and a director of I.O.S. and several officers of I.C.S. who were also officers of I.O.S. alleging violations of the registration provisions of Section 5 of the Securities Act of 1933 and Section 7 of the Investment Company Act of 1940 with respect to the offer and sale of unregistered interests in The Fund of Funds, Ltd. and unregistered participations in the I.O.S. Investment Program for accumulation of interests in The Fund of Funds, Ltd. Violations were also alleged of Section 17(d) of the Investment Company Act of 1940 and Rule 17 d–1 thereunder, relating to transactions between International Investment Trust, an investment

company affiliate of I.O.S. and The Fund of Funds, Ltd., and certain registered investment companies. A further violation of Section 17 of the Exchange Act was alleged relating to failure to preserve and produce certain books and records of I.O.S. and I.C.S.

On June 5, 1967 the S.E.C. entered an Order Accepting Offer of Settlement on an Offer of Settlement by the I.O.S. and the others against whom the proceedings were instituted by the terms of which the S.E.C. made no findings and I.O.S. and the others offered to terminate, within a time therein approved, all activity subject to regulation by the S.E.C. As far as relevant to this action, I.O.S. and its affiliates will not be selling interests in The Fund of Funds in the United States or to United States citizens or nationals overseas. Such sales will be limited abroad only to United States citizens and nationals who are officers, directors or full-time personnel of I.O.S. and its affiliates and as set forth in the Offer of Settlement. Persons who purchased interests in The Fund of Funds and who were either members of the armed forces, other employees of the U. S., or residents of the U. S., its territories, possessions or commonwealth sub-

Offices outside the United States which sell The Fund of Funds shares are located in 60 foreign countries. These shares are also sold through sales representatives in 50 other foreign countries. I. O. S. claims it is the largest mutual fund and investment program distributor specializing in the international market. No claim or proof has been offered to the contrary. I. O. S. says it has more than 100,000 clients in 125 countries. Again, this claim is not disputed.

Since 1962, plaintiffs claim, they have continuously publicized and used the name The Fund of Funds by printing the name on its stationery, printed matter, prospectus, periodic reports and by advertising. Plaintiffs further claim they have expended substantial sums of money and considerable time in keeping the name The Fund of Funds before the investment community. Plaintiffs have publicized and distributed, for informational purposes, to broker-dealers, investment bankers, stock exchange firms, mutual funds management companies, investment advisers, and other members of the professional investment community throughout the world, information

---

ject to the jurisdiction of the United States will be given an opportunity, within a reasonable period of time, to substitute, under terms satisfactory to S.E.C., shares of registered investment companies for their interests in The Fund of Funds, Ltd., or the opportunity of exercising other options which would terminate any continuing or further ownership of interest in The Fund of Funds, Ltd.

I.O.S. and its affiliates, under the Order of Settlement, may retain their interest in Pension Life Insurance Company of America provided that company conducts a normal and customary insurance business not subject to the jurisdiction of S.E.C. Under the Order of Settlement, I.O.S. will cause The Fund of Funds to make only such further purchases of shares of registered investment companies as are within the limitations of Section 12(d)(1) of the Investment Company Act. In addition, all other controlling interests of I.O.S. or any of its affiliates will cease within a specified time and no future controlling interests will be acquired in any American company without the prior consent of S.E.C.

Under the Order of Settlement, four specified mutual fund companies established by I.O.S., The York Fund, Inc., The Alger Fund, Inc., The Douglas Fund, Inc. and Computor Directions Fund, Inc., are to be liquidated within five days of the order; two other companies, I.C.S. and Investors Planning Corp., are to have their controlling interests transferred to independent interests within sixteen months.

Financial Institutions Growth Stock Fund, another affiliate of I.O.S., is to be liquidated on or before August 15, 1967 under the terms of the Order of Settlement.

Finally, under the terms of the Order of Settlement, I.O.S. and I.C.S. on June 5, 1967, withdrew their registrations as broker-dealers and I.O.S. and its affiliates (including The Fund of Funds, Ltd., International Investment Trust, Ltd., and any investment company affiliated with any of the foregoing hereafter organized and their respective affiliates and investment advisers) shall not conduct any activities subject to the jurisdiction of the S.E.C., except as previously mentioned and further described in the Order of Settlement.

Consequently, when this action was commenced in the state court on July 12, 1966, it appears that plaintiffs may have been susceptible to the charge that they had come into equity with unclean hands. The S.E.C.'s Order of Settlement, however, made no findings. Since an injunction speaks as of the future and since at the time injunctive relief is here granted plaintiffs have settled any disagreements they had with S.E.C. respecting S.E.C.'s jurisdiction over their activities in this country, the doctrine of unclean hands should not be applied since the central concern of the law of unfair competition in this case is protection of the public from confusion in the securities market. Cf. Coca-Cola Company v. Koke Company of America, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189 (1920); Recamier Mfg. Co., Inc. v. Harriet Hubbard Ayer, 59 F. 2d 802 (S.D.N.Y.1932); Extrin Foods, Inc. v. Leighton, 202 Misc. 592, 115 N. Y.S.2d 429 (Sup.Ct.N.Y.Co., 1952); Clark v. Clark, 25 Barb. 76, 80 (N.Y.Sup.Ct. 1857). See generally, Note, The Besmirched Plaintiff And The Confused Public: Unclean Hands In Trademark Infringement. 65 Col.Law Rev. 109 (1965).

concerning the activities of The Fund of Funds in the form of magazines, bulletins and reports. These claims are not challenged.

In addition, The Fund of Funds has been the subject of several articles in widely circulating American magazines and newspapers such as Time, Business Week, Newsweek, The New York Times, and the Wall Street Journal. The Fund of Funds is depicted by these articles as a financial phenomenon enjoying unparalled success—something of an investment wonder of the world.

A Securities and Exchange Commission Report on the mutual funds business released December 2, 1966, focused on the activities of plaintiffs, particularly The Fund of Funds, resulting in even more publicity, not all favorable, for plaintiffs. CCH, Federal Securities Law Reporter, Current, Sec. 74,545 (1967).

There seems to be no room for doubt that the foregoing described publicity had made the name The Fund of Funds a household name in the mutual funds investment community, despite the fact that the name had been in use only since August 1962, when defendant became incorporated in September 1965. Perhaps the fact that in approximately three and one-half years The Fund of Funds purchased, through United States broker-dealers, approximately $400,000,000 of United States mutual funds bespeaks most convincingly the household character of the name.

Prior to August 1962, when plaintiff first used the name The Fund of Funds, no other company had ever used the words "fund of funds" as a part of its name. In fact, it appears that the idea, itself, of a fund of funds may be the progeny of plaintiffs. Plaintiff, The Fund of Funds, Limited, is the largest company in the world engaged in a fund of funds busines, although there is evidence of similar activity by smaller companies abroad. CCH, Federal Securities Law Reporter, supra, § 74,545.

Plaintiff I. O. S. also has established numerous subsidiary companies here and abroad in the mutual funds and other commercial fields, including an insurance company in this country known as the Pension Life Insurance Company of America.

From the time of its incorporation on September 23, 1965 until June 2, 1967, defendant's corporate name was First American Fund of Funds, Inc. That name suggested, and the S. E. C. report confirms, that defendant will be one of the first two holding companies in this country to launch an American version of a fund of funds in the mutual fund line of securities. CCH, Federal Securities Law Reporter, supra, § 74,545. Defendant was incorporated under the laws of New York and has its principal office in that State. It has not yet begun to sell its shares to the public. The name of its mutual fund was, prior to June 2, 1967, First American Fund of Funds. After this suit was filed in July 1966, defendant became a registered investment company under the name First American Fund of Funds. Investment Company Act of 1940, 15 U.S.C.A. § 80a–1 et seq. After commencement of this suit, defendant was also registered under the Securities Act of 1933 under its original corporate name (15 U.S.C.A. § 77a et seq.) Defendant, by such registration, was authorized to offer and sell its securities throughout the United States, its territories and possessions but will also use its corporate name throughout the world. In its prospectus submitted to S.E.C. in connection with such registration, defendant advises its prospective customers that it is in no way connected with The Fund of Funds, Ltd.

In March 1966, when defendant filed its registration statement with the S.E. C., under its name prior to June 2, 1967, plaintiffs first learned of the use of the words "fund of funds" by another company. Through their counsel, plaintiffs sent a letter dated March 29, 1966, to defendants advising that plaintiffs viewed the use of such name as confusingly similar to plaintiff's The Fund of Funds name. Plaintiffs in this communication demanded that defendants choose another name which would not be confusingly

similar to plaintiffs' name. By letter dated May 2, 1966, defendant "unequivocally" rejected plaintiffs' position "entirely and completely". Defendant further replied: "We intend to continue to use our present corporate name in the United States and throughout the world."

On July 12, 1966, plaintiffs commenced this action in the Supreme Court of New York, New York County, against defendant. The gravamen of that complaint is as follows:

> The corporate name of defendant is substantially identical with and is deceptively similar to the corporate title and fund name of plaintiff Funds. The effect of the use of the corporate name "First American Fund of Funds" by defendant will be to deceive the investing public, other funds, broker-dealers, and other persons in the securities business in the United States and abroad into believing that the defendant and plaintiff Funds are one and the same, or that the defendant is a subsidiary or affiliate of plaintiff Funds, or of plaintiff IOS, or that defendant is managed, advised, or distributed by plaintiff IOS, or is a subsidiary or affiliate of plaintiff IOS, or that defendant is in some other manner associated with or related to the plaintiffs. The result will be to imperil plaintiffs' reputation, business and good-will and to confuse the investing public, broker-dealers, other mutual funds, and other persons in the securities business, causing them to believe that plaintiff Funds and defendant are related to or associated with one another, thereby causing loss of sales outside the United States to plaintiff Funds or enabling defendant to make sales and profits it would not otherwise make. Defendant's use of its corporate name will be an unfair and deceptive simulation of plaintiff Funds' corporate title and fund name. Defendant has completely appropriated plaintiff Funds' complete corporate title and fund name.

By petition filed in this court on July 29, 1966, defendant removed the action to this court. Title 28, U.S.C. § 1441 et seq. Defendant claims that this court has jurisdiction of this cause under Title 28, U.S.C. §§ 1331 and 1332. Defendant further claims that the action was removable since the act of defendant specifically complained of by plaintiffs is the filing of a Registration Statement with the S.E.C. pursuant to the Securities Act of 1933, Title 15, U.S.C. § 77a et seq., and the intention of defendant to issue securities under said act. Plaintiffs' name is not a registered trade name or trademark.

■■ This court has jurisdiction of this action as one based upon diversity of citizenship of the parties, Title 28, U.S.C. § 1332. Plaintiffs' claim is one cognizable under New York's common law of unfair competition. American-Marietta Co. v. Krigsman, 275 F.2d 287 (2d Cir. 1960). The relief sought by plaintiffs is an injunction restraining defendant from using the corporate business name of "First American Fund of Funds, Inc.", or any corporate business name or trade name or fund name similar to plaintiffs' corporate or fund name. Plaintiffs also seek an accounting and assessment of damages and profits.

After the removal of this cause to this court, plaintiffs moved under Rule 56, Fed.R.Civ.P., for summary judgment in its favor. In opposition, defendant moved for an order under Rule 56(f) Fed.R.Civ. P., holding plaintiffs' motion for summary judgment in abeyance pending defendant's completion of examination of plaintiffs' president, pursuant to notice dated July 29, 1966. Defendant alleges the notice has not been complied with. Plaintiffs, by affidavit, dispute this allegation claiming that their president was available at a time which defendant's counsel claimed was inconvenient for them.

Defendant also moved, pursuant to Rule 15(a) and 13(f), for an order permitting it to amend its answer in accordance with its proposed amended answer. By amending its answer from a general denial (except for admitting the ex-

change of letters between the parties) defendant seeks to counterclaim. The counterclaim is "for a judgment declaratory of defendant's unqualified right to use the words 'fund of funds' as part of its name and in any other lawful and truthful manner", without interference by plaintiffs. Defendant further seeks, by amendment, an injunction enjoining plaintiffs from interfering with defendant's use of the words "fund of funds", or taking any action disparaging of defendant with respect to the use of said words. The amendment of the answer is allowed. The foregoing motions for summary judgment and to amend were all heard on February 14, 1967.

On June 8, 1967, before any of the motions were decided, both parties appeared before the court. Defendant's counsel advised the court that on June 2, 1967 it changed its corporate name to First American Fund of Growth Funds, Inc. Plaintiffs' counsel advised the court that it has the same objection to the new name which by this action it interposed to the use of the first name. By agreement of counsel, the court decides the pending motions by sustituting the new name of defendant as the name in controversy.

This court finds that there is no genuine issue as to any fact material to the claim for injunctive relief. This court also concludes that plaintiffs are entitled to judgment as a matter of law with respect to the use by defendant of the words "fund of funds" and "fund of growth funds" as its corporate name or fund name. The court also concludes that defendant is entitled to use the words "fund of funds" or "fund of growth funds" as a slogan or description of its business activity but not as a part of its corporate name or fund name.

The only fact about which defendant claims there is a dispute is whether plaintiffs' use of the words "fund of funds" has acquired secondary meaning. In other words, whether these words have come to be identified with plaintiffs' mutual funds activity described above.

The purpose of a summary judgment motion is to avoid a long and costly trial to prove facts about which there can be no real dispute. 6 Moore's Federal Practice (2d ed.) § 56.04. An examination of plaintiffs' affidavits, the opposing affidavits filed by defendant, and its opposing motions and proposed amended answer show, conclusively, that there is no genuine issue as to whether plaintiffs have succeeded in garnering for themselves a secondary meaning in the use of the words "fund of funds" in their corporate name. Defendant certainly cannot hope to prove by taking the deposition of plaintiffs' president that the words in question have not acquired secondary meaning in light of the lengthy, persuasive affidavit and exhibits already filed by plaintiffs' president in support of their motion. Defendant has not convinced the court that it will be able to prove that in the investment world the words "fund of funds" have been used so extensively by others with respect to their mutual fund activity that no secondary meaning could have been acquired by plaintiffs. The S.E.C. report precludes any such suggestion. The S.E.C. report makes clear that plaintiffs have the most extensive operation of this kind in the world, that The Fund of Funds is well known to the American investment community, and that defendant would be one of the first two operations of this kind in the country. The fact that the prospectuses of the American companies in which The Fund of Funds purchased stock describe plaintiffs' company as a stockholder is further irrefutable evidence of the fact that plaintiffs are known to American purchasers and managers of mutual funds. Consequently, to stay a decision on plaintiffs' motion for the purpose of enabling defendant to take the deposition of plaintiffs' president would not, in the view of this court, uncover any genuine issue as to the single alleged factual dispute here. Defendant specifically does not point to any other source of possible evidence which would lead this court to believe that the factual claims made by plaintiffs and set forth above regarding plaintiffs' activities, size, purchases of shares in United States' companies, and

wide publicity with respect to their name, The Fund of Funds, are not valid claims. These facts regarding plaintiffs appear in third party publications over which it does not appear plaintiffs have any control and cannot be classed as self-serving statements. Certainly, the S.E.C. report cannot be put into this category. Moreover, defendant does not challenge or dispute these facts by affidavit in any convincing way. Defendant simply claims these facts do not add up to the acquisition of secondary meaning and, therefore, plaintiffs are not entitled to injunctive relief. The cases do not support defendant's contention.

Plaintiffs are entitled to injunctive relief if they prove "secondary meaning plus likelihood of confusion on the one hand or that [defendant] * * * has indulged in one of the proscribed practices which equity will enjoin, on the other." These practices are referred to in the law of unfair competition as "palming off", actual deception, and misappropriation of a property right. Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569, 571 (2d Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960); Speedry Products, Inc. v. Dri Mark Products, Inc., 271 F.2d 646 (2d Cir. 1959); Lincoln Restaurant Corp. v. Wolfies Restaurant, Inc., 291 F.2d 302 (2d Cir.), cert. denied, 368 U.S. 889, 82 S.Ct. 143, 7 L.Ed.2d 88 (1961); Flexitized, Inc. v. National Flexitized Corporation, 335 F.2d 774 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L. Ed.2d 799 (1965).

■ This court holds that plaintiffs have proved that the words "fund of funds" have acquired secondary meaning in the mutual fund investment industry and that use by defendant of the name First American Fund of Growth Funds is likely to cause confusion in that members of the investing public or professional investment community are likely to believe that defendant is a subsidiary of or somehow affiliated with plaintiffs.

This is a rare case in the sense that plaintiffs have managed to acquire secondary meaning in a relatively short period of time. See, Speedry Products, Inc. v. Dri Mark Products, supra, 271 F.2d at 649–650; See, Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (2d Cir. 1956); See, Noma Lites v. Lawn Spray, 222 F.2d 716, 717 (2d Cir. 1955); See, Santa's Workshop v. Sterling, 2 A. D.2d 262, 153 N.Y.S.2d 839 (3rd Dept. 1956), aff'd, 3 N.Y.2d 757, 163 N.Y.S.2d 986, 143 N.E.2d 529 (1957); See, Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609 (7th Cir. 1965).

■ There is no direct evidence here that the investing public associates the words "fund of funds" with plaintiffs; however, from the evidence contained in and attached to the affidavits in support of plaintiffs' motion for summary judgment and recited, supra, and the S.E.C. report of December 2, 1966, the conclusion is inescapable that the words "fund of funds" have come to be identified with plaintiffs. Plaintiffs' extraordinarily large American holdings, their far flung sales and expensive promotional activities, publicity in widely circulating publications and more than passing notice in a major government agency report about the business in which plaintiffs are engaged and which would be widely read by the professional segment of the industry of which plaintiffs are now a vital part, give the words "fund of funds" secondary meaning within legal contemplation. See, Lincoln Restaurant Corp. v. Wolfies Restaurant, supra; Maternally Yours v. Your Maternity Shop, supra; Famous Sea Food House, Inc. v. Skouras, 272 A.D. 258, 70 N.Y.S.2d 702 (1st Dept., 1947); Albro Metal Products Corp. v. Alper, 281 App.Div. 68, 117 N.Y.S.2d 342 (1st Dept., 1952); Harvey Machine Co., Inc. v. Harvey Aluminum Corp., 9 Misc.2d 1078, 175 N.Y.S.2d 288 (Sup.Ct., N.Y.Co., 1957), appeal dismissed, 4 A.D. 2d 1014, 170 N.Y.S.2d 969 (1st Dept. 1957); Metropolitan Life Insurance Co. v. Metropolitan Insurance Premium Finance Corp., 264 F.Supp. 507 (S.D.Fla. 1966).

Consumer protection is the pivotal concern of the law of unfair competition.

"Consumer protection has been limited to the prevention of confusion, i. e., the customer should not mistake defendant's articles for that of plaintiff or believe that it derives from the same source as plaintiff's goods. It is in such context that secondary meaning inheres, and when this special significance attaches in the public mind to the non-functional attributes of its wares, a plaintiff need further establish merely the likelihood of confusion—or a defendant may rebut the effect of secondary meaning by proving that confusion is unlikely. Restatement of Torts, Sec. 741 (1938), Lucien Lelong, Inc. v. Lander Co., 2 Cir., 1947, 164 F. 2d 395." Norwich Pharmacal Company v. Sterling Drug, Inc., supra, 271 F.2d, at 571 (2d Cir. 1959).

Here the words "fund of funds" describe plaintiffs' business. The question, therefore, is whether any secondary meaning can attach to such a descriptive term. The Second Circuit's analysis of the New York court's decision in Santa's Workshop v. Sterling, supra, a similar case, seems to supply an affirmative answer to the question posed. The court concluded, after analyzing the basis of the New York Court's decision: "The decision, * * *, in favor of the plaintiff in that case could easily have been grounded on a finding that secondary meaning had been quickly acquired." Speedry Products, Inc. v. Dri Mark Products, supra, 271 F.2d, at 650. The question, however, was subsequently settled by the Second Circuit's decision in Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 498–499 (2d Cir. 1962). There the court said:

" * * * Descriptive words receive less protection under the law of trademarks than fanciful or coined words because words in our general vocabulary which all can use to describe products or services should not be unduly limited.

Telechron, Inc. v. Telicon Corp., 198 F.2d 903 (3rd Cir. 1952).

"If a descriptive word has taken on a secondary meaning, however, courts will afford equitable protection to the party whose use of the word has created the secondary meaning. See, Maternally Yours, Inc. v. Your Maternity Shop, 234 F.2d 538 [544] (2d Cir. 1956)."

In the *Safeway* case, the court found secondary meaning in that the term "Safeway" in the retail business had become identified with the plaintiff there because of association with it over a long period of time. The court then concluded that it need not consider whether the term, as originally used, was descriptive or fanciful. Safeway Stores, Inc. v. Safeway Properties, Inc., supra, 307 F.2d, at 499.

More recently, the Second Circuit has held that, "Whether a descriptive mark has acquired secondary meaning depends upon the facts of each case." W. E. Bassett Company v. Revlon, Inc., 354 F.2d 868, 871 (2d Cir. 1966). This court holds that the words "fund of funds" are primarily descriptive rather than fanciful, since they do describe the mutual funds business activity of plaintiffs, and that these words have become identified with plaintiffs within a relatively short period of time for the reasons set forth above.

Perhaps anticipating the foregoing holdings, on June 2, 1967, defendant changed its corporate name from First American Fund of Funds, Inc. to First American Fund of Growth Funds, Inc. When the parties appeared before the court on June 8, 1967, defendant argued that this change of name was not objectionable because: 1) distinguishable from plaintiff's name, and 2) along with a change of name would go a change of business, i. e., defendant would not be dealing in ordinary mutual funds but in what it described as "growth funds", a field in which plaintiff has not yet functioned on a pronounced basis.[2]

2. Defendant's prospectus describes its aim as follows:

The Fund seeks growth of capital by investing in several steps, in several

selected funds and then keeping them under observation. It seeks to invest in shares of those funds it believes will (1) increase most in net asset value, or earn

■ Defendant's change of name and variation in type of mutual funds, however, does not sufficiently distinguish defendant from plaintiff so as to eradicate the likelihood of confusion in the mind of the investing public and securities industry which it is the purpose of the law of unfair competition to protect. Safeway Stores, Inc. v. Safeway Properties, Inc., supra.

"The law of unfair trade comes down very nearly to this—as judges have repeated again and again—that one merchant shall not divert customers from another by representing what he sells as emanating from the second." Yale Electric Corp. v. Robertson, 26 F.2d 972, 973 (2d Cir. 1928). More specifically, ". . . It may be sufficient if the similarity of the names leads to the belief that the . . . new concern is a subsidiary of the older business or an authorized dealer or branch of it, or because the public may be induced to extend credit to the new corporation, or to buy its stock, or to deal with it otherwise, believing that they were dealing with the older corporation." 1 Nims, Unfair Competition and Trade-Marks, 278–279 (4 Ed. 1947).

The New York Supreme Court has ruled that,

"A wrongful attempt to suggest an association or connection of some sort is sufficient to warrant relief to prevent confusion in the public mind as well as dilution of plaintiff's trade name * * *" Louis Vaudable v. Montmarte, Inc., 20 Misc.2d 757, 759, 193 N.Y.S.2d 332, 335 (Sup.Ct., N.Y. Co. 1959).

■ Since the words "fund of funds" in a trade name or corporate name have come to be identified with plaintiffs, and since this acquisition came about in a very spectacular way in a relatively short period of time, and since the fund on funds concept is in its initial stages of development in the mutual funds field in this country, it is reasonable to conclude that the public will believe that defendant, which has not yet begun its sales to the American public, is somehow connected with plaintiffs. Cf. Safeway Stores, Inc. v. Safeway Properties, Inc., supra. This is so not only because the names are similar but because the businesses of both are similar if not the same. "It is not necessary to show actual cases of deception or confusion, * * *, since the test is the likelihood that an appreciable number of ordinarily prudent purchasers will be confused." Maternally Yours v. Your Maternity Shop, supra, 234 F.2d at 542. In Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755, 761 (2d Cir. 1960) the court said: "Actual confusion or deception of purchases is not essential to a finding of trademark infringement or unfair competition, it being recognized that 'reliable evidence of actual confusion is practically almost impossible to secure.' "

■ Moreover, defendant will be operating in an area of normal expansion for plaintiffs to which new area equity will extend its protection. W. E. Bassett Company v. Revlon, Inc., supra; Safeway Stores, Inc. v. Safeway Properties, Inc., supra; Maternally Yours v. Your Maternity Shop, supra; Sam S. Goldstein Industries, Inc., v. General Electric Company, 264 F.Supp. 403 (S.D.N.Y. 1967). Accord, Metropolitan Life Insurance Co. v. Metropolitan Premium Finance Corp., supra; Taussig v. Wellington Fund, Inc., 187 F.Supp. 179 (D. Del.1960), aff'd, 313 F.2d 472 (3rd Cir.

---

most capital gains, or both, but (2) liquidating part or all of its investment in those funds in several steps, before a substantial part of their portfolios in Management's judgment, become overpriced. Capital appreciation will be sought through long term, and not through short term holdings. The Fund's policy is to minimize portfolio trading and turnover.

It does not seek investment income consisting of dividends the funds receive on shares in their portfolios and pay out to their shareholders, but such investment income as shall be received shall be distributed to its shareholders annually. However if the Fund succeeds in its quest for capital growth, it may result in growth of such investment income.

1963), cert. denied, 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (1963).

 The fact that in its prospectus defendant advises its prospective customers that it is in no way connected with plaintiff is not decisive of this question. Lincoln Restaurant Corp. v. Wolfies Restaurant, Inc., supra, 291 F.2d at 303. Neither is the fact that plaintiffs will be selling only to foreign nationals abroad and, therefore, will not be in direct competition with defendant who will be selling in this country controlling. Lincoln Restaurant Corp. v. Wolfies Restaurant, Inc., supra; Ball v. United Artists Corp., 13 App.Div. 133, 139, 214 N.Y.S.2d 219, 226 (1st Dept., 1961); Cue Publishing Co., Inc. v. Kirshenberg, 22 Misc.2d 188, 198 N.Y.S.2d 993 (Sup.Ct.N.Y.Co., 1960); Louis Vaudable v. Montmarte, Inc., supra; Sullivan v. Ed Sullivan Radio & T. V., Inc., 1 A.D.2d 609, 152 N.Y. S.2d 227 (1st Dept. 1956); Maison Prunier v. Prunier's Restaurant & Cafe, Inc., 159 Misc. 551, 288 N.Y.S. 529 (Sup.Ct.N.Y.Co., 1936). Accord, Continental Motors Corp. v. Continental Aviation Corp., 375 F.2d 857 (5th Cir. 1967). It does appear, however, from defendant's advice to plaintiffs that defendant intends to use its name throughout the world, defendant will be selling its shares abroad, and will, therefore, be in direct competition with plaintiffs outside the United States. Nor is the fact of geographic separation of the two companies of any decisive significance in this context. Lincoln Restaurant, supra; Ambassador East, Inc. v. Shelton Corners, Inc., 120 F.Supp. 551 (S.D.N.Y.1954). Accord, Tisch Hotels, Inc. v. Americana Inn, Inc., supra; Stork Restaurant v. Sahati, 166 F.2d 348 (9th Cir. 1948); Thompson v. Alpine Motor Lodge, Inc., 296 F.2d 497 (5th Cir. 1961), remanding, aff'd after trial, 324 F.2d 374 (5th Cir. 1963); Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79 (3rd Cir. 1958).

"Almost invariably the selection by a defendant for use in his business of a trade name or mark which has theretofore been used and advertised by another, is for the purpose of appropriating its value and reaping the benefit of the labor of him who may have made the name an emblem of quality, or of taste, or a symbol of fair dealing. Equity does not shirk from interfering to prevent such spoliation. Names other than plaintiff's, there are in plenty, which defendant could have selected." John Forsythe Co., Inc. v. Forsythe Shoe Corp., 234 A.D. 355, 358, 254 N.Y.S. 584, 587 (1st Dept. 1932), modified, 259 N.Y. 248, 181 N.E. 467 (1932); Tiffany & Co. v. Tiffany Productions, 147 Misc. 679, 264 N.Y.S. 459, 461 (Sup.Ct.N.Y.Co., 1932), aff'd, 237 A.D. 801, 260 N.Y.S. 821 (1st Dept., 1932), aff'd, 262 N.Y. 482, 188 N.E. 30 (1933). Defendant's adoption of the name First American Fund of Funds and then the name First American Fund of Growth Funds, under the facts of this case, "is compatible with nothing but 'a purpose to capitalize in [The United States] upon the trade name [The Fund of Funds] first adopted by the plaintiffs [abroad].'" Lincoln Restaurant Corp. v. Wolfies Restaurant, supra, 291 F.2d, at 303.

 Since defendant has not yet begun to sell its shares to the public, plaintiffs have not proved any past monetary damages or the necessity for an accounting. This relief is denied.

"To postpone the granting of relief until actual injury could be proved would be to deprive the equitable remedy of its most valuable trait—the dispensation of preventive justice. * * * The court may properly presume that the confusion of source will be injurious and therefore wield its injunctive powers with dispatch to prevent the infliction of harm." Philadelphia Storage Battery Co. v. Mindlin (Sup. Ct.N.Y.Co., 1937) 163 Misc. 52, 296 N. Y.S. 176, 179.

 An injunction will issue enjoining defendant from using the words "fund of funds" and "fund of growth funds" as a part of its corporate name or fund name. However, the words may be

used to describe defendant's business or as a slogan. Safeway Stores, Inc. v. Safeway Properties, Inc., supra, 307 F.2d at 499; Spicer v. W. H. Bull Medicine Co., 49 F.2d 980 (C.C.P.A.1931).